2018 WY 8

Karl ALLRED, on behalf of himself and the citizens of Wyoming; and former Representative Gerald Gay, in his capacity as a former member of the House of Representatives, Appellants (Plaintiffs),

v.

Eli D. BEBOUT, President of the Senate, Wyoming Legislature; Matthew H. Mead, Governor; Steve Harshman, Speaker of the House; Drew A. Perkins, Senate Majority Floor Leader; Chris Rothfuss, Senate Minority Floor Leader; David R. Miller, House Majority Floor Leader; Cathy Connolly, House Minority Floor Leader; Fred Emerich, Senate Representative; Peter Michael, Attorney General; Dan Dockstader, Senate Representative; Fred Baldwin, Senate Representative; Brian Boner, Senate Representative; Lloyd Larsen, House Representative; Danny Eyre, House Representative; and Bob Nicholas, House Representative, Appellees (Defendants).

S-17-0078

Supreme Court of Wyoming.

January 30, 2018

Representing Appellants: Drake D. Hill, Hill Law Firm, LLC, Cheyenne, Wyoming.

Representing Appellees: Jay A. Jerde, Special Assistant Attorney General, Wyoming Attorney General's Office.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

FOX, Justice.

[¶1] Two Wyoming citizens sought to challenge legislation that authorized two construction projects while maintaining a degree of legislative control which the citizens contend violate the Wyoming Constitution. They also alleged a pattern of letting state contracts without competitive bidding or required safeguards, contrary to the Wyoming Constitution and laws. They sought to amend their complaint to add a third plaintiff who would have alleged economic harm resulting from the contracting practices. The district court found that the citizens lacked standing, and that adding the third plaintiff would be futile. Appellants ask us to reverse that determination, which requires us to consider once again the challenging question of standing in cases where matters of great public interest are alleged.

[¶2] At this Court's request, the parties also briefed the question of whether the statute enacted in 2017, which prohibits naming a legislator in a lawsuit if he or she is sued in an official capacity, violates the Wyoming Constitution. We will affirm the district court's decision, finding that the citizens lack standing, and because there is no justiciable controversy, we will not address the constitutionality of the "naming statute."

### ISSUES

[¶3] Because the parties' issue statements illustrate their radically different views, we will restate them in full here.

[¶4] Appellants define the issues as:

(A) Where government officials have violated separation of powers, have effected an alteration of the structure of government without undertaking the constitutional amendment process, and have violated the procurement and anti-corruption provi-

sions of the Wyoming Constitution and Wyoming statutes, do citizens and taxpayers have standing to contest violations of the Wyoming Constitution and Wyoming statutes by government officials?

(B) Did the district court err in not applying the "great public importance doctrine" where the doctrine is applied to constitutional cases in Wyoming and where this case indisputably involves constitutional questions of great public importance?

(C) Do Wyoming citizens and taxpayers have standing to contest violations of the Wyoming Constitution and statutes by government officials in the areas of separation of powers, alterations of the constitution without utilization of the constitutional amendment process, and competitive bidding and spending provisions of the Wyoming Constitution and Wyoming statutes?

(D) Did the district court err in not allowing the joinder of a person who had been ousted from state contracting by governmental officials who have refused to comply with constitutional and statutory competitive bidding mandates?

(E) Does Senate Enrolled Act 70 (2017) (Wyo. Stat. § 1-35-109) violate Article 2, Section 1 (separation of powers) of the Wyoming Constitution in purporting to prescribe whether a legislator can be sued in his or her name?

[¶5] The State defines the issues differently:

I. For a court to have jurisdiction over a declaratory judgment action, the facts alleged in the complaint must establish that the plaintiff satisfies each element of the four part *Brimmer v. Thomson* justiciability test. The facts alleged in their amended complaint show that Karl Allred and Gerald Gay do not satisfy any of the elements of the Brimmer test. Does their amended complaint present a justiciable controversy?

II. In a declaratory judgment action, the justiciability requirement may be relaxed if the plaintiff presents a matter of great pubic interest or importance, provided he alleges facts to show that he has suffered harm to a tangible interest and he will benefit from a court judgment. The facts alleged here show that Allred and Gay do not satisfy the tangible interest and practical benefit elements. Does the great public interest or importance doctrine apply here?

III. In its sound discretion, a district court may deny a motion to amend a complaint if the proposed amendment would be futile. Allred and Gay filed a motion to amend their amended complaint to add Benjamin Hornok as a plaintiff. The district court denied the motion because Hornok lacked standing and had not exhausted the available administrative remedies. Did the district court abuse its discretion by denying the motion to amend?

IV. For civil actions not involving the State of Wyoming, the judicial branch has authority to regulate court practice and procedure and the Wyoming Legislature has authority to regulate the substantive rights of persons. The Legislature enacted Wyoming Statutes § 1-35-109 to address who is the proper party in civil actions involving a challenge to an official legislative act. Does § 1-35-109 violate the separation of powers provision in the Wyoming Constitution?

*FACTS*

[¶6] Appellants, Karl Allred, "on behalf of himself and the citizens of Wyoming," and Representative Gerald Gay, "in his representative capacity," filed the complaint and amended complaint in this matter. Because this is an appeal of an order granting a motion to dismiss, we review the facts as alleged in the amended complaint. Mr. Allred and Mr. Gay attempted to add Benjamin J. Hornok later, in the form of a motion to amend the complaint to add a party, which the district court denied primarily because it would be futile, reasoning that Mr. Hornok also lacked standing and had failed to exhaust his administrative remedies.

## I. Allegations in the amended complaint

### A. The Parties

[¶7] Mr. Allred is identified as "a citizen of Wyoming and an individual residing in Uinta

County, Wyoming." He brought the action "on behalf of himself in his capacity as a citizen of Wyoming and on behalf of the citizens of Wyoming." Mr. Gay was, at the time the amended complaint was filed, "the duly elected representative of House District 36 from Natrona County and [ ] a member of the House of Representatives of the Wyoming Legislature," who brought this action "in his representative capacity." They sued Governor Matt Mead, Wyoming Attorney General Peter Michael, and legislative members of the Capitol Square Oversight Group at the time: Senate President, Philip Nicholas; House Speaker, Kermit Brown; Senate Majority Floor Leader, Eli Bebout; Senate Minority Floor Leader, Chris Rothfuss; House Majority Floor Leader, Rosie Berger; House Minority Floor Leader, Mary Throne; Senate President selected member, Senator Tony Ross; and House Speaker selected member, Representative Tim Stubson. They also named as defendants members of the Department of Health Facilities Task Force at the time: senate co-chair, Senator Eli Bebout; senate member, Senator Dan Dockstader; senate member, Senator Drew Perkins; house co-chair, Representative Loyd Larsen; house member, Representative Bob Nicholas; and house member, Representative Tim Stubson. All the defendants are sued in their official capacities.

[¶8] The amended complaint alleges that each defendant is responsible for ensuring compliance with the Wyoming Constitution, and each was responsible for enacting the challenged laws, and has the statutory authority to implement those laws. It further alleges that each defendant has been involved in the implementation of the challenged statutes, and "through their oversight function has engaged [sic] violations of the Wyoming Constitution and procurement statutes . . . ."

**B. Leases and Contracts**

[¶9] The amended complaint makes the following allegations regarding specific leases and contracts:

**1. Lease for Housing Legislature During the Capitol Renovation**

[¶10] The Department of Administration and Information Construction Management Division entered into a lease with Pershing Circle, LLC for the building known as the Jonah Business Center, where the legislature is housed during the Capitol renovation. Pershing Circle, LLC's managing partner is Neil A. McMurry, who "made one of the largest contributions [to Governor Mead] in a political campaign outside of the candidate or immediate family of the candidate in Wyoming history . . . ." The lease was entered into without competitive bidding and was not approved by the State Treasurer.

**2. Lease for 2020 Carey Avenue**

[¶11] The lease to house the Wyoming State Treasurer, Wyoming State Auditor, and Wyoming Secretary of State during the Capitol construction was entered into without competitive bidding and was not approved by the State Treasurer. The State entered into contracts with various contractors who did work on the space to prepare it for occupancy, without competitive bidding and without approval by the State Treasurer. The amount of the contracts related to the 2020 Carey lease as of the date of the amended complaint was $2,748,303.67. Wayne Voss, the signatory for the lease, made a $1,000 contribution to Governor Mead's campaign.

**3. 516 South Greeley Highway Shopping Center Lease**

[¶12] Other state agencies are being housed at 516 South Greeley Highway pursuant to a lease that was entered into without competitive bidding, and without the State Treasurer's approval. Lessor Maurice Brown contributed $1,000 to Governor Mead's campaign.

**4. Bidding of JE Dunn Contract**

[¶13] Pre-construction services were competitively bid, but the actual construction activities by JE Dunn and several amendments which significantly increased the construction cost limitation and expanded the scope of work were not competitively bid.

**5. Prestige Corporate Relocation LLC Contract**

[¶14] The Department of Administration and Information contracted with Prestige

Corporate Relocation LLC to move the Department of Environmental Quality from the Herschler Building. The State Treasurer did not approve the contract. As a result of miscalculations, the State overpaid the moving company. This work was put out for bid, but the State justified a bid waiver because of non-response to the request for proposal.

[¶15] The amended complaint alleges a pattern of contracting by the State without competitive bidding, asserting that 80 percent "of all contracting managed by the Department of Administration and Information Procurement Division for the State of Wyoming is not done by competitive bidding but rather through sole source contracting," representing $620,000,000 in expenditures in the current biennium.

[¶16] Finally, the amended complaint asserts that the Department of Health Facilities Task Force, which is comprised of six legislators and two members of the executive branch, entrusts to the legislative branch various executive branch functions, such as implementing recommendations on the design of Department of Health Facilities, procuring design studies, supervising design studies, and evaluating options for management and ownership of the Wyoming Retirement Center.

[¶17] Plaintiff/Appellant Gerald Gay requested that the Wyoming Legislature call upon the Attorney General to investigate these improprieties; that request was rejected. He then asked the Attorney General directly to conduct an investigation; the Attorney General did not respond to that request. Appellants clearly state that they do not

> seek to set aside any contract(s). Rather, this Complaint seeks a ruling as to the constitutionality of the statute, potential violations of the Wyoming Constitution and procurement statutes in the implementation of the statutes, and of the proper administration of government.

1. The law was amended in 2016 in ways not germane to this appeal. 2016 Wyo. Sess. Laws,

## C. Count I—Separation of Powers

### 1. The Capitol Square Project

[¶18] In the 2014 session, the Wyoming Legislature enacted

> AN ACT relating to administration of government; providing for the rehabilitation and restoration of the capitol building and the remodeling and construction of other state properties; codifying and continuing a task force; specifying process and duties relating to specified capital construction projects; providing for reports; transferring unexpended appropriations and making other appropriations; providing for interfund borrowing and repayment of borrowed funds; amending, conforming or repealing related provisions; authorizing positions; and providing for an effective date.

2014 Wyo. Sess. Laws, ch. 40, § 1. The law, codified at Wyo. Stat. Ann. §§ 9-5-110 through 9-5-113, created an oversight group comprised of the Governor and persons filling identified legislative positions (Capitol Square Oversight Group), § 9-5-111(a). It authorized the renovation of the Herschler Building and the Capitol and associated purchases, and arrangements for temporary accommodations during the pendency of the work, with all plans subject to approval of the Capitol Square Oversight Group. § 9-5-112(a)-(f).[1] The amended complaint alleges that, by giving this power to the Capitol Square Oversight Group, the legislation gives control of the "Capitol Square Project to the legislative members of the Capitol Square Oversight Group," and the named defendant legislators "have departed from their constitutionally prescribed and limited role and have usurped and taken control over executive branch functions in violation of Article 2, Section 1 of the Wyoming Constitution and separation of powers doctrine." It requests a declaration that the Capitol Square Project legislation violates the separation of powers provision of the Wyoming Constitution.

ch. 105, § 3.

### 2. The Department of Health Facilities Task Force

[¶19] In the 2016 legislative session, the legislature created the Department of Health Facilities Task Force, comprised of six legislators and two members of the executive branch appointed by the Governor. 2016 Wyo. Sess. Laws, ch. 97, § 4(b). The Task Force was charged with:

(i) Procuring and supervising a Level III design study for the Wyoming state hospital and the Wyoming life resource center; and

(ii) Evaluating potential options for the management and ownership structure of the Wyoming retirement center;

(iii) Providing interim reports on the activities of the task force to the joint appropriations committee and the joint labor, health and social services interim committee not later than November 1, 2016 and November 1, 2017;

(iv) Providing recommendations for legislative action.

*Id.* at § 4(c). The Task Force is to be staffed by the Legislative Service Office, with the Department of Administration and Information to serve in an advisory capacity. *Id.* at § 4(d).

[¶20] The amended complaint alleges that:

By vesting responsibility and control over for [sic] implementation, procurement, supervision, execution, and control over Department of Health facilities to a group controlled by members of the Wyoming Legislature, who hold power to overrule any vote of the executive branch, the Legislature and a select group of legislators have departed from their constitutionally prescribed and limited role and have usurped and taken control over executive branch functions in violation of Article 2, Section 1 of the Wyoming Constitution and separation of powers doctrine.

The plaintiffs ask the court to enter declaratory judgment that this law violates the separation of powers provision of the Wyoming Constitution because it "purports to assign executive branch duties to the legislative branch," and to declare that any further executive branch function sought to be performed by the legislative members of the Task Force shall be of no effect and must be performed by the executive branch.

### D. Count II—All Power Inherent in the People

[¶21] Count II of the amended complaint alleges that by taking duties which the Wyoming Constitution entrusted to the executive branch and assigning them to the legislative branch, the challenged legislation has de facto amended the constitution. Yet, constitutional amendment is a power reserved to the people in article 1, section 1 of the Wyoming Constitution, which provides:

All power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety and happiness; for the advancement of these ends they have at all times an inalienable right to alter, reform or abolish the government in such manner as they think proper.

Thus, the amended complaint requests declaratory judgment that the Capitol Square Oversight Group and Department of Health Facilities Task Force have violated this provision of the Wyoming Constitution, and declaring void and severing all legislative branch duties from the challenged statutes.

### E. Count III—Constitutional and Statutory Contracting and Procurement of the Capitol Square Project

[¶22] The amended complaint alleges that, with respect to the Capitol Square Project:

- contracts for repairing and furnishing the halls of the legislature were not let utilizing a competitive bid process;
- contracts did not set a maximum price and have been allowed to escalate through change orders and mismanagement;
- contracts were let in furtherance of the political interests of an elected official; and
- contracts were not approved by the Governor and State Treasurer.

[¶23] These practices, it is alleged, violate Wyoming Constitution article 3, section 31, which provides:

All stationery, printing, paper, fuel and lights used in the legislature and other departments of government shall be furnished, and the printing and binding of the laws, journals and department reports and other printing and binding, and the repairing and furnishing the halls and rooms used for the meeting of the legislature and its committees shall be performed under contract, to be given to the lowest responsible bidder, below such maximum price and under such regulations as may be prescribed by law. No member or officer of any department of the government shall be in any way interested in any such contract; and all such contracts shall be subject to the approval of the governor and state treasurer.

Further, the amended complaint alleges that these practices violate the "procurement statutes."[2] It seeks declaratory judgment that the Capitol Square Oversight Group and the Attorney General "have violated the competitive bidding, maximum contract price, bar against self-interest, and signatory requirements of" the constitution and laws of Wyoming. Appellants requested "an order directing that all further contracting be performed" in accordance with article 3, section 31 and the procurement statutes. They did not seek a judgment that would affect existing contracts.

### F. Count IV—Violation of Competitive Bidding Requirements of Procurement Statutes

[¶24] Count IV of the amended complaint seems to address the award of state contracts in general. It alleges that "[f]or the current biennium, a total of well over $550,000,000 ... has been expended under contracts that were not competitively bid," and that 80 percent of all contracting managed by the Department of Administration and Information Procurement Division is done by sole source contracting and not competitive bidding.

[¶25] The amended complaint seeks a judgment finding that the "Governor and Attorney General have violated the competitive bidding requirements of the procurement statutes," and order that "all further contracting be performed under competitive bidding, except where expressly excepted, and without self-interest ...." Appellants do not seek a judgment that would affect existing contracts.

### G. Count V—Injunctive Relief

[¶26] Count V asks the court to enjoin the defendants from any further violation of the constitution and laws of Wyoming, and ordering that "all future actions taken by the Capitol Square Oversight Group and the Department of Health Facilities Task Force, as well as general contracting by the State of Wyoming, be performed in accordance with" law. Appellants do not seek a judgment that would affect existing contracts.

### II. Allegations in the proposed second amended complaint

[¶27] After defendants had filed their motion to dismiss the amended complaint, plaintiffs filed a Motion to Amend Complaint to Add Party Plaintiff, attaching a proposed Second Amended Complaint for Declaratory Judgment and Injunctive Relief for Violations of the Wyoming Constitution. The second amended complaint sought to add as a plaintiff Benjamin J. Hornok, alleging that he was a senior project manager for an unnamed employer, who was required to lay Mr. Hornok off as a result of lack of work. The lack of work was the "result of the construction management contract being awarded to an out of state company," MOCA Systems, without competitive bidding. Further, the proposed second amended complaint alleges that Mr. Hornok has been denied the opportunity to bid on contracts for which he was qualified by the "pervasive and ongoing practice of the Defendants in maintaining a closed and anti-competitive market for state contracts that violates competitive bidding requirements under state law." Mr. Hornok would have the court order that any

---

2. Although the "procurement statutes" are never identified in the amended complaint, Appellant's brief references Wyo. Stat. Ann. § 9-2-1016, which provides that the Department of Administration and Information is the agency charged with procurement of supplies and services, in accordance with certain procedures, including competitive bidding, where feasible or practical.

further construction management contracting related to the Capitol Square Project, or "any other contracting for which he is qualified," be awarded pursuant to competitive bidding processes. Further, he would request an order that MOCA Systems be paid for work performed and for expectancy interests, but that any remaining work be subject to competitive bidding.

[¶28] The district court dismissed the amended complaint, finding that "the Plaintiffs have not and cannot demonstrate that they have a genuine, tangible interest at stake in this proceeding," and they therefore have not presented a justiciable controversy that would allow the court to exercise jurisdiction over the matter. The district court went on to deny the motion to amend to add Mr. Hornok as a party, finding that such amendment would be futile because he also failed to present a justiciable controversy, and he has failed to exhaust administrative remedies.

### DISCUSSION

#### I. Appellants Karl Allred and Gerald Gay do not have standing

##### A. Standard of Review

[¶29] Our review of a motion to dismiss, whether under W.R.C.P. 12(b)(6) or 12(b)(1), is de novo. "We employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint or petition as true and view them in the light most favorable to the nonmoving party." *Moose Hollow Holdings, LLC v. Teton Cty. Bd. of Cty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017) (quoting *Guy v. Lampert*, 2015 WY 148, ¶ 12, 362 P.3d 331, 335 (Wyo. 2015)). When we review dismissal of a complaint for lack of jurisdiction, "we focus on the allegations contained in the complaint and liberally construe them in the light most favorable to the plaintiff." *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 9, 206 P.3d 722, 726 (Wyo. 2009) (quoting *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 7, 79 P.3d 500, 504-05 (Wyo. 2003)). "Likewise, jurisdictional issues regarding the justiciability of a declaratory judgment action are questions of law subject

to de novo review." *Int'l Ass'n of Firefighters Local Union No. 279 v. City of Cheyenne*, 2013 WY 157, ¶ 8, 316 P.3d 1162, 1166 (Wyo. 2013).

[¶30] The keystone of justiciability in both federal and state jurisprudence is the separation of powers. As the United States Supreme Court has explained:

> The requirement that [a plaintiff] must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches. It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

*Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996) (citations omitted). That rationale applies equally to the separation of powers provision of the Wyoming Constitution, which proscribes each branch of government from exercising the powers of another branch. Wyo. Const. art. 2, § 1. "It is not the function of the judicial branch to pass judgment on the general performance of other branches of government." *William F. West Ranch*, 2009 WY 62, ¶ 32, 206 P.3d at 733.

[¶31] We begin by disposing of some issues which are not presented in this case.

##### B. No Taxpayer Standing was Alleged

[¶32] Although Appellants strenuously argued in their brief and at oral argument that they had standing as taxpayers, they made no allegations in their amended complaint that would support such a claim. In fact, the word "taxpayer" does not appear in the amended complaint. On review of an order granting a motion to dismiss, we will liberally construe facts alleged in the amended complaint; however, "liberal construction of pleadings does not 'excuse omission of that which is material and necessary in order to entitle one to relief.'" *The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 21, 395 P.3d

167, 173 (Wyo. 2017) (quoting *Elworthy v. First Tenn. Bank*, 2017 WY 33, ¶ 20, 391 P.3d 1113, 1119 (Wyo. 2017)). Further, we have not yet expressly recognized taxpayer standing in Wyoming,[3] although we have suggested in dicta that "[a] taxpayer is not entitled to maintain a proceeding for a declaratory judgment in the absence of any showing that the statute, ordinance, or act being questioned will increase the taxpayer's burden as a taxpayer." *Village Road Coalition v. Teton Cty. Hous. Auth.*, 2013 WY 38, ¶ 16 n.2, 298 P.3d 163, 169 n.2 (Wyo. 2013). No such allegation appears in the amended complaint. Finally, Appellants' argument that "this Court upheld citizen and taxpayer standing" in *Director of Office of State Lands & Investments v. Merbanco, Inc.*, 2003 WY 73, 70 P.3d 241 (Wyo. 2003) is not supported by a careful reading of that case. In *Merbanco*, we determined that parents, schoolchildren, and the Wyoming Education Association (WEA) had standing to challenge a land exchange without public auction because the children would be "tangibly injured if they do not uniformly receive the best education that tax resources can provide," *Id.* at ¶ 17, 70 P.3d at 248, and because the WEA members and parents would also be injured by reduced funding for schools. *Id.* at ¶ 18, 70 P.3d at 248. We found these parties had a tangible interest that had been harmed "[b]ecause parents have an interest in their children receiving a proper education, and the failure to auction the land would directly affect the revenue available to enable their children's education . . . ." *Village Road Coalition*, 2013 WY 38, ¶ 15, 298 P.3d at 169 (citing *Merbanco*, 2003 WY 73, ¶¶ 15-18, 70 P.3d at 248). Although the parties were interested in the education that tax resources could provide, they asserted no interest as taxpayers.

### C. No Standing is Conferred by Virtue of Having Been an Elected Representative

[¶33] Mr. Gay was, at the time of the amended complaint, the duly elected representative of House District 36 and a member of the Wyoming House of Representatives. He alleges that he

> has the right to expect that the branch of government that he represents is constrained to the functions delegated to it by the Wyoming Constitution and he has been aggrieved to the extent the branch of government that he represents acts outside of its constitutionally prescribed authority.

[¶34] Mr. Gay's position as an elected member of the House of Representatives, standing alone, is not a basis to confer standing on him. His personal disappointment in the actions of the legislature does not provide him a special right to act, and he offers no basis to conclude that he has been authorized by the legislature to act on its behalf. As we noted in *William F. West Ranch*, no action as a private attorney general may be maintained absent a "statute specifically giving a party the right to act as a private attorney general to enforce the state's laws." 2009 WY 62, ¶ 32 n.11, 206 P.3d at 733 n.11.

### D. Federal Standing Law May Guide, but Does Not Govern, Wyoming's Standing Law

[¶35] Appellants assert that our standing analysis should not be governed by federal law, and we agree. Federal standing law rests largely on the "case or controversy" requirements of Article III, Section 2 of the United States Constitution. *Flast v. Cohen*, 392 U.S. 83, 94-95, 88 S.Ct. 1942, 1949-50, 20 L.Ed.2d 947 (1968). The Wyoming Constitution has no comparable provision, and instead it contains provisions such as article I, section 8, providing for access to courts. Robert B. Keiter, *The Wyoming State Constitution*, at 31-32 (2d ed. 2017). We have on occasion found guidance in federal standing law, *see White v. Woods*, 2009 WY 29A, ¶ 20, 208 P.3d 597, 603 (Wyo. 2009); *Miller v. Wyo. Dep't of Health*, 2012 WY 65, ¶ 18, 275 P.3d 1257, 1261 (Wyo. 2012), and we continue to do so, although we recognize that we are not bound by the tight constraints of federal law on this issue.

---

**3.** Appellant cites *MacDougall v. Board of Land Commissioners*, 48 Wyo. 493, 49 P.2d 663 (1935), for the proposition that we recognize taxpayer standing, but that case not only predates *Brim-* mer by several decades, it merely accepted plaintiff's standing without challenge and without discussion.

[¶36] We therefore turn to the question whether Mr. Allred and Mr. Gay, asserting rights held by all Wyoming citizens to enforce the constitution and laws of Wyoming, have alleged sufficient facts to present this Court with a justiciable controversy. For purposes of this analysis, we assume without deciding that the legislative and administrative acts alleged are illegal and unconstitutional.

**E. The *Brimmer* Test**

[¶37] In *Brimmer v. Thomson*, 521 P.2d 574 (Wyo. 1974), the attorney general sought declaratory judgment, and legislators whose terms had not expired and who alleged they wished to run for governor counterclaimed for judgment that they were eligible to run for office despite a formal opinion of the attorney general placing "in serious question the right of a State Senator who is serving a full term to become a candidate for another elective office during the period of his term." *Id.* at 576. There, the court found, "[i]t is conceded that all of the defendants have the proper qualifications for such office unless they be ineligible by virtue of the constitutional provisions." *Id.* at 577. The *Brimmer* court recognized that declaratory judgment actions are to be liberally construed, but that nevertheless the court must make a threshold determination whether there is "such dispute which could serve as the basis of a justiciable issue?" *Id.* Accordingly, the *Brimmer* court adopted the following four-part test for standing:

> First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent

of all of them. Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution.

521 P.2d at 578 (quoting *Sorenson v. City of Bellingham*, 80 Wash.2d 547, 496 P.2d 512, 517 (1972)). In *Brimmer*, we found that "defendants certainly have a genuine and existing right, i.e., to seek election for a public office for which they have proper qualifications." *Id.* at 578. Conversely, they would be injured if their candidacy were wrongfully prevented, and the judgment of the court would "effectually operate to preserve this right . . ." and "have the force and effect of a final judgment . . . ." *Id.* at 578-79. Finally, it found the element of adversity existed because the attorney general opinion, if not withdrawn or reversed, would be "a bar to the aspirations of these defendants." *Id.* at 579. The court also found that, "concerning as it does the election process for the entire State of Wyoming," *Id.* at 578, this was a matter of great public importance. In discussing that factor, the court cautioned:

> This exception must be applied with caution and its exercise must be a matter where strict standards are applied to avoid the temptation to apply the judge's own beliefs and philosophies to a determination of what questions are of great public importance.

*Id.*

[¶38] Our analysis and application of the *Brimmer* factors have not always been consistent. In 1979, we held that the Board of Land Commissioners did not have standing for a declaratory judgment on its decision giving state land lessees the right to meet the highest bid and acquire state land, because "there was no guarantee the Whites would exercise their right to meet the highest bid after public auction." *William F. West Ranch*, 2009 WY 62, ¶ 13, 206 P.3d at 728 (citing *White v. Bd. of Land Comm'rs*, 595 P.2d 76, 80 (Wyo. 1979)). In *Gooden v.*

*State*, 711 P.2d 405 (Wyo. 1985), a motorist who was cited for driving while under the influence of alcohol challenged a statute which required that persons charged with the crime "shall be prosecuted under this section and not under a reduced charge." *Id.* at 408. Ms. Gooden argued that the statute constituted an infringement on "the prosecutorial discretion of the executive branch" and violated the separation of powers clause at article 1, section 2 of the Wyoming Constitution. We held that Ms. Gooden "has not demonstrated that any right of hers had been infringed by this challenged statute either in fact or in law." *Id.* at 409. Without such a right, she had "no personal stake in any unconstitutional infringement by a statute such as this one upon the discretion of the prosecutor," and she lacked standing. *Id.* at 410.

[¶39] We relaxed the standing requirements in *State ex rel. Wyoming Association of Consulting Engineers and Land Surveyors v. Sullivan*, 798 P.2d 826 (Wyo. 1990), where we found the existence of a matter of great public importance alone was sufficient to confer standing, holding:

> Without deciding whether Petitioners have standing to seek the issuance of a writ of mandamus which requires Governor Sullivan to implement the Wyoming Professional Review Panel Act, we hold that the issue of whether the Wyoming Professional Review Panel Act is constitutional is of great public importance and, therefore, merits a decision from this Court.

*Id.* at 829. We reached the same conclusion in *Management Council of Wyoming Legislature v. Geringer*, 953 P.2d 839, 840 (Wyo. 1998), where we held that the issue regarding the constitutionality of the governor's partial veto power was one "of great public importance that merits a decision from this Court, and we, therefore, recognize the standing of the Management Council to seek a declaratory judgment on that question." *Id.* at 842. Although the court did not apply the four *Brimmer* elements in that case, it did recognize that "standing is a concept utilized to determine if a party is sufficiently affected to insure that a justiciable controversy is presented to the court." *Id.* (quoting *Was-*

*hakie Cty. Sch. Dist. No. 1 v. Herschler*, 606 P.2d 310, 316 (Wyo. 1980)). In *Geringer*, the Management Council of the Wyoming Legislature brought an action to challenge the governor's power to exercise a partial veto over legislation enacted in the previous special session. 953 P.2d at 840. Clearly, each party—the legislature and the governor—would be significantly affected by the outcome of a decision that would determine whether the legislation would be adopted with or without the governor's changes.

[¶40] Since *Geringer*, we have retreated from this liberal application of the public interest factor. In *William F. West Ranch*, we acknowledged that the plaintiffs had a tangible interest affected by coal bed methane water and thus, they satisfied the first *Brimmer* element. However, we held that they failed to "demonstrate that the controversy is one upon which a judgment of the court may effectively operate." *William F. West Ranch*, 2009 WY 62, ¶ 26, 206 P.3d at 731. Thus, they failed the second prong of the *Brimmer* test. We agreed that the issue there, the administration of water, was a matter of great public importance. *Id.* at ¶ 44, 206 P.3d at 736. We recognized that historically, we have relaxed our "definition of standing when a matter of great public interest or importance is at stake," *Id.* at ¶ 45, 206 P.3d at 736, or when "a constitutional question is presented." *Id.* at ¶ 45, 206 P.3d at 737. But, we stressed that "[t]his exception must be applied with caution and its exercise must be a matter where strict standards are applied to avoid the temptation to apply the judge's own beliefs and philosophies to a determination of what questions are of great public importance." *Id.* (quoting *Jolley v. State Loan & Inv. Bd.*, 2002 WY 7, ¶ 10, 38 P.3d 1073, 1078 (Wyo. 2002)). We observed that "a great public interest alone is insufficient to warrant the action of the court under any situation which we might at present foresee." *William F. West Ranch*, 2009 WY 62, ¶ 46, 206 P.3d at 737 (quoting *Cranston v. Thomson*, 530 P.2d 726, 729 (Wyo. 1975)). We explained our reluctance to weigh in on the State's administration of water, saying "[i]t is not the function of the judicial branch to pass judgment on the general performance of other branches of gov-

ernment." *Id.* at ¶ 32, 206 P.3d at 733. We concluded that the plaintiffs' claims were too general, and "do not connect the alleged deficiencies in the State's administration of water to a direct harm they have suffered." *Id.* at ¶ 50, 206 P.3d at 738.

[¶41] Since *William F. West Ranch*, we have maintained a more faithful application of *Brimmer*, and continued to apply a more balanced view of standing. *See, e.g., Village Road Coalition*, 2013 WY 38, ¶¶ 13-16, 298 P.3d at 168-69; *Guy*, 2015 WY 148, ¶¶ 26-28, 362 P.3d at 340; *City of Torrington v. Smith*, 2016 WY 126, ¶¶ 24-25, 386 P.3d 336, 344 (Wyo. 2016). Although we did find, in *Maxfield v. State*, 2013 WY 14, 294 P.3d 895 (Wyo. 2013), that "the requirement of a justiciable controversy may be relaxed in cases involving matters of sufficient public interest," *id.* at ¶ 18, 294 P.3d at 900, we also found that the secretary of state's complaint met the *Brimmer* elements for a justiciable controversy because, "unlike the landowners in *William F. West Ranch*, Mr. Maxfield alleged a connection between a specific statutory provision . . . and the particular harm he will suffer—being precluded from seeking a third term as secretary of state." *Id.* at ¶ 24, 294 P.3d at 901.

[¶42] Wyoming's standing jurisprudence has been criticized by some commentators. *See, e.g.,* Robert B. Keiter, "[i]n the absence of constitutional or statutory underpinnings, the court's approach to standing law constitutes nothing other than naked judicial lawmaking. It is indeed ironic that this is the case when a fundamental premise underlying standing doctrine is judicial restraint." Robert B. Keiter, *An Essay on Wyoming Constitutional Interpretation*, XXI Land & Water L. Rev. 527, 541 (1986); *see also* Amy M. Staehr, *Civil Procedure—The Wyoming Supreme Court Constricts the Public Interest Exception of the Declaratory Judgments Act; William F. West Ranch, L.L.C. v. Tyrrell 206 P.3d 722 (Wyo. 2009)*, 10 Wyo. L. Rev. 141, 143 (2010). In fact, state and federal standing jurisprudence in general has been the subject of extensive and sometimes strident attacks. *See* William A. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 221 (1988) ("The structure of standing law in the

federal courts has long been criticized as incoherent. It has been described as 'permeated with sophistry,' as 'a word game played by secret rules,' and more recently as a largely meaningless 'litany' recited before 'the Court . . . chooses up sides and decides the case.'" (citations omitted) ); Heather Elliot, *The Functions of Standing*, 61 Stan. L. Rev. 459 (Dec. 2008); Michael S. Gilmore, *Standing Law in Idaho: A Constitutional Wrong Turn*, 31 Idaho L. Rev. 509 (1995). *But see* M. Ryan Harmanis, *State's Stance on Public Interest Standing*, 76 Ohio St. L.J. 729 (2015) (This note, cited by Appellants, concludes that "the rationales supporting public interest standing are unconvincing," and that "[p]ublic interest standing equates to the judiciary expanding its own power, often at the expense of the political process or another branch of government." Ryan, *supra*, at 759).

[¶43] Appellants, however, do not ask us to reconsider our standing precedent. Rather, they contend that this case raises matters of such overwhelming public import that our precedent allows this Court to find a justiciable controversy exists. ("[T]he case presents whether citizens and taxpayers can enter the courtroom to constrain violations of the Wyoming Constitution and Wyoming statutes by government officials.") Appellants contend that if they cannot have access to the court to challenge unconstitutional acts of the executive and legislative branches, nobody can. ("If the people do not have the right to question unlawful alterations in the form of government, then who does?") The State takes the position that if we find these parties have standing, then everybody has standing to sue the State with allegations of unconstitutional acts, and the floodgates will open. Likewise, the parties present us with extreme positions on the interplay of a great public interest factor with the four *Brimmer* elements—Appellants contending that the issues they raise are of such great public importance, that alone is sufficient to confer standing, while the State contends that all four elements must be satisfied before the public interest is considered. The answer lies somewhere between these extremes. The *Brimmer* test is imperfect, its elements often overlap, and our application has not been

uniform. But it is the mechanism we have for honoring the separation of powers and ascertaining justiciability.

## 1. Existing and Genuine, as Distinguished from Theoretical, Rights or Interests

[¶44] Appellants alleged in their amended complaint that Count I (violation of separation of powers) meets this element because:

> The executive branch was endowed with specific authority to execute the laws passed by the legislative branch and has both a right and duty to exercise and perform those duties without usurpation of those duties by the Legislature. In violation of Article 2, Section 1 of the Wyoming Constitution, executive branch powers have been removed by the Legislature.

While it describes their separation of powers contentions, this allegation does nothing to establish the existence of genuine rights or interests, or, in other words, that Appellants "have a tangible interest which has been harmed." *William F. West Ranch*, 2009 WY 62, ¶ 22, 206 P.3d at 730. In Appellants' brief, they again argue passionately about the importance of separation of powers, but say little about a tangible interest that has been harmed. They contend that they "have a right to protect their liberty interests by calling upon the judiciary to confine the legislature to its constitutional limits," and, they say, "[t]heir liberty interests are genuine and very personal in the assurance that the legislature adheres to the rule of law by confining itself to constitutional limits." But that conclusory statement fails to establish a tangible interest that has been harmed. In *Jolley*, we found that the appellant had failed to establish this element because he asserted "interests indistinguishable from that which could be raised by any citizen of Wyoming," and we held that "[c]laims of injury of a broad and general nature are not sufficient to demonstrate that Appellant was 'aggrieved or adversely affected *in fact* by the Boards' actions.'" 2002 WY 7, ¶ 8, 38 P.3d at 1077 (emphasis in original).

[¶45] The cases cited by Appellants do not persuade us of the existence of this element here. In *Washakie County School District No. 1 v. Herschler*, we found that "the rule requiring the existence of justiciable controversies is somewhat relaxed in matters of great public interest or importance," but we addressed that element only after we held each of the four *Brimmer* elements "to be met in the instant case." 606 P.2d at 318. We held that each of the categories of plaintiffs had a tangible interest at stake.

> The school districts and the members of school boards are charged with the responsibility of providing education to the children of Wyoming and are tangibly injured if the statutes which guide their hands disenable them from so providing. Parents are keenly concerned and suffer tangible injury if their children do not receive a proper education. The children themselves are, obviously, tangibly injured if they do not uniformly receive the best education that tax resources can provide.

*Id.* at 317.

[¶46] In *Wyoming Association of Consulting Engineers and Land Surveyors v. Sullivan*, the Court did dispense with an analysis of the *Brimmer* factors because "the issue of whether the Wyoming Professional Review Panel Act is constitutional is of great public importance and, therefore, merits a decision from this Court." 798 P.2d at 829. As discussed, *see supra* ¶ 40, we have retreated from such a broad application of the public interest to standing analysis. Further, the plaintiff there, the Association, had a genuine and existing right in compelling the governor to implement the Wyoming Professional Review Panel Act, whose purpose was to "[r]educe the costs of professional malpractice claims ... by a less formal professional review of claims before litigation is pursued in the courts." *Id.* at 829. Appellants cite us to no Wyoming case, and we have found none, that recognize standing of a party that had no more interest in the matter than that of any citizen.

[¶47] Appellants contend that *Cathcart v. Meyer*, 2004 WY 49, 88 P.3d 1050 (Wyo. 2004) and *Maxfield v. State*, 2013 WY 14, 294 P.3d 895 stand for the proposition that "[t]he right to vote ... is a right genuine and personal to every elector (voter)." In fact,

those two cases rely for their finding that the parties had standing on very specific rights asserted by individuals on their own behalf. In *Cathcart*, two legislators who would be barred from running again by Wyoming's term limits law, and two qualified electors who were represented in the legislature by the two legislators, brought an action to challenge the term limits law. The court found no "serious challenge to the [appellants'] standing" because "[t]he term limit law has an immediate and profound impact upon the appellants' interests." *Cathcart*, ¶ 12, 88 P.3d at 1057-58. The *Cathcart* court went on to say that "the constitutionality of a statute may only be questioned by a party whose rights are affected thereby," and therefore the appellants could not assert that the law was unconstitutional as to other elected officials. *Id.* at ¶ 37, 88 P.3d at 1064. In *Maxfield*, the secretary of state challenged the application of the term limit law to him. 2013 WY 14, ¶ 1, 294 P.3d at 896. The court held that "[a] judgment declaring that [the law] is, or is not, constitutional will operate to determine whether he is entitled to seek a third term as secretary of state and will act as a final judgment upon his rights." *Id.* at ¶ 24, 294 P.3d at 901. The court there found that "[e]ven without our conclusion that Mr. Maxfield's complaint involves a matter of great public importance, we would hold that the case presents a justiciable controversy." *Id.* at ¶ 22, 294 P.3d at 900. Neither *Catchcart* nor *Maxfield* held, or even addressed, the question of whether there exists some broad standing for voters or citizens in general.

[¶48] Finally, Appellants cite to *Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991). That case is likewise unhelpful to their position. There, the plaintiff citizen's group alleged that the actions of the petitioners would "result in increased noise, pollution, and danger of accidents." *Id.* at 264, 111 S.Ct. at 2306. The Court found that many members of the citizens group lived under flight paths to and from the airports, *id.* at 262, 111 S.Ct. at 2304, thus distinguishing

their interest from citizens in general. Again, we find nothing here to support Appellants' position that they have alleged existing and genuine, as distinguished from theoretical, rights or interests.

[¶49] Here, the amended complaint identifies Karl Allred as a "citizen Plaintiff" who "brings this suit on behalf of himself in his capacity as a citizen of Wyoming and on behalf of the citizens of Wyoming," and not in his personal capacity. Gerald Gay has alleged no personal interest distinguishable from the interest of any Wyoming citizen.[4] The Appellants' claim of injury is "indistinguishable from that which could be raised by any citizen of Wyoming," *Jolley*, 2002 WY 7, ¶ 8, 38 P.3d at 1077, they claim no application of the statute to them, and they fail to demonstrate that they are aggrieved or adversely affected in fact.

## 2. Controversy Upon which the Judgment of the Court May Effectively Operate

 [¶50] This redressability element is the other side of the injury coin. "The first two elements of the *Brimmer* test are inextricably linked: if a plaintiff fails to allege that an interest has been harmed, a judicial decision cannot remedy a nonexistent harm." *Village Road Coalition*, 2013 WY 38, ¶ 16, 298 P.3d at 169. Appellants' failure to satisfy this element is well-illustrated by an examination of the relief they request in their amended complaint. There, the Appellants expressly disclaim any desire to challenge existing contracts:

This Complaint makes no accusations against recipients of contracts for work related to the Capitol Square Project or for other contracts awarded by the State of Wyoming or those making political donations. Nor does this Complaint seek to set aside contract(s). Rather, this Complaint seeks a ruling as to the constitutionality of the statute, potential violations of the Wyoming Constitution and procurement statutes in the implementation of the statutes,

---

4. *See supra* ¶¶ 33-34 for our discussion of Appellant Gerald Gay's "representative capacity" claim.

and of the proper administration of government.

[¶51] The remedy sought for Count I (violation of separation of powers by the Capitol Square Oversight Group Health Care Facilities legislation) and for Count II (improper legislative amendment of the constitution) is for a declaration that "any executive branch function sought to be performed by the legislative members ... after the entry of an order by this Court on the separation of powers question shall be of no effect ...." With respect to Count III (violation of article 3, section 31 and procurement statutes), the amended complaint sought a declaration that the Capitol Square Oversight Group and the Attorney General have violated that provision of the Wyoming Constitution, and "an order directing that all further contracting be performed under competitive bidding, under maximum contract pricing, without self-interest, conforming to the signatory requirements of article 3, section 31, as administered and carried out by the executive branch alone." The remedy Appellants sought for Count IV (pattern of violation of competitive bidding requirements), is likewise only prospective, requesting "an order directing that all further contracting be performed under competitive bidding ... and without self-interest on the part of any member of the executive or legislative branches." Finally, in Count V, the request for injunctive relief is for an order "requiring that all future actions ... be performed in accordance with the Wyoming Constitution and procurement statutes." In *Brimmer*, we recognized that "[a] declaratory judgment is a binding adjudication of the rights and status of the litigants even though no consequential relief is awarded." 521 P.2d at 579. Here, however, Appellants' failure to seek a judgment that would have an effect on the alleged existing and ongoing violations they object to highlights the fact that there is no remedy for their nonexistent harm.[5]

### 3. Controversy the Judicial Determination of which Will Have the Force and Effect of Final Judgment in Law/or, Wanting These Qualities be of Such Great and Overriding Public Moment as to Constitute the Legal Equivalent

[¶52] The district court held that this element was present, because it is the judiciary's role to declare "the validity of statutes in relation to the constitution." It concluded that, as in *Rocky Mountain Oil & Gas Ass'n v. State*, 645 P.2d 1163, 1168 (Wyo. 1982), "giving or refusing relief requested in the complaint will have final force and effect upon the rights, status and legal relationship of the parties." Because the district court ruled in Appellants' favor on this issue, they present little argument that would support our finding that this element exists on de novo review. The State, however, contends that this element cannot be met because, without elements 1 and 2, the court lacks jurisdiction. We agree that Appellants' amended complaint does not contain allegations that satisfy the third *Brimmer* prong, though for slightly different reasons than the State proposes.

[¶53] We must examine the complete language of this prong:

Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them.[6]

and then re-letting the contracts and paying for the same thing again.

**5.** Appellants argue in their brief on appeal that the remedy they seek is "terminating contracts that were not competitively bid (while paying the contractors for work performed and expectancy damages as it has never been the Appellants' desire to harm contractors) and re-letting the contracts using competitive bidding ...." However, there is no request to terminate the contracts in the amended complaint. Further, it is doubtful the public interest would be served by paying the contractors their expectancy interests

**6.** This language seems to indicate that the public interest should be considered as part of the third prong. However, in *Brimmer*, the court treated it as a separate element, 521 P.2d at 579, and all of our cases since then likewise analyze the public interest as an independent element that can have an effect on the weight placed on the four ele-

*Brimmer*, 521 P.2d at 578. A judicial determination would have the force and effect of final judgment. However, in addition to requiring that the judicial determination have the force and effect of a final judgment, this element requires that the judgment affect "the rights, status or other legal relationships of one or more of the real parties in interest." We have determined that these parties have not alleged "rights, status or other legal relationship," because they have not asserted either injury or redressability.

### 4. Proceedings Genuinely Adversary

[¶54] As the district court noted, "[t]he body of case law that examines the fourth *Brimmer* element is sparse." It is clear from the briefing, both in the district court and on appeal, that the parties have advanced their positions "with sufficient militancy to engender a thorough research and analysis of the major issues." *Brimmer*, 521 P.2d at 578. It is less clear that the proceedings can "be genuinely adversary in character and not a mere disputation," *Id.*, when we have determined that these Appellants have alleged neither injury nor redressability. The militancy with which the parties advance their positions can never suffice to overcome the absence of the other prongs of justiciability.

### 5. Matter of Great Public Interest and Importance

[¶55] It is undisputed the allegations that statutes and actions of the legislative and executive branches violate the Wyoming Constitution raise matters of great public interest and importance. We held in *William F. West Ranch*, 2009 WY 62, ¶ 46, 206 P.3d at 737, however, that:

> The Uniform Declaratory Judgments Act envisions a true justiciable controversy before the court may decide a matter, even if the case presents a matter of great public importance. The act does not extend the jurisdiction of the court and § 1-37-103 specifically requires that an "interested" person present an appropriate "right" for

ments, rather than as part of the third element. *See supra* ¶¶ 38-41.

declaration before the court can assume jurisdiction.

[¶56] Appellants neither contest this holding, nor advance an argument for a different application of the public interest factor. Rather, they continue to contend that they have "shown tangible interests in enforcing separation of powers, power over alterations in the form of government without following the constitutional amendment process, and the fiscal impact of failing to follow competitive bidding and other spending requirements ...." As we have discussed above, Appellants have failed to meet any of the four *Brimmer* elements; therefore, the existence of a matter of great public importance is insufficient to confer standing on them.

[¶57] In their reply brief, Appellants make another attempt to argue for public interest standing, contending that "[m]ost states, including Wyoming, have found that taxpayer challenges of unlawful expenditures of money show tangible interests achieving practical benefit from a judicial decision." Putting aside the fact that Appellants have failed to allege taxpayer standing in any form, *see supra* ¶ 32, not one of the cases they cite in support of that statement withstands a reading of the case.[7] In *Ex parte State ex rel. Alabama Policy Institute*, 200 So.3d 495, 527 (Ala. 2015), *abrogated by Obergefell v. Hodges*, —— U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015), the Alabama Supreme Court found that the plaintiff had standing because he had alleged an injury "peculiar to himself." In *Keller v. French*, 205 P.3d 299 (Alaska 2009), a case which Appellants cite for proposition that "citizen-taxpayer standing [is] recognized, requiring showing that the case is of 'public significance,'" the Alaska Supreme Court, applying a standing test that is quite different than Wyoming's, held that the appellants there lacked standing, in part because they failed to "demonstrate that they have a 'sufficient personal stake' in the outcome of the controversy and 'an interest which is adversely affected by the complained-of conduct.'" *Id.* at 304. In *Chapman v. Bevilacqua*, 344 Ark. 262, 42 S.W.3d 378

7. *See* Antonin Scalia & Bryan A. Garner, *Making Your Case, The Art of Persuading Judges*, at 123 (2008) ("Describe and cite authorities with meticulous accuracy.").

(2001), the court found that the plaintiff had standing to sue for allegedly improper disbursements of federal funds only to the extent that those funds were derived from taxpayer monies, as distinguished from federal funds. *Id.* at 384. The court reasoned that, as to federal funds which the city was not liable to repay, the taxpayer would have no liability, and therefore no standing. *Id.* at 383-84. In *Reeder v. Wagner*, 974 A.2d 858 (Del. 2009), the Delaware Supreme Court affirmed the dismissal of a complaint for lack of standing, noting that the plaintiffs "were seeking an advisory opinion from the Superior Court reflecting their interpretation of certain statutes . . . ." *Id.* (citations omitted). In *School Board of Volusia County v. Clayton*, 691 So.2d 1066, 1068 (Fla. 1997), the court also rejected the appellants' claim of standing, noting "[t]he requirement that a taxpayer seeking standing allege a 'special injury' or a 'constitutional challenge' is consistent with long established precedent." Finally, Appellants quote a phrase from *Brock v. Hall County*, 239 Ga. 160, 236 S.E.2d 90, 91 (1977): "citizens and taxpayers may contest the expenditure of public funds by suit for injunction." That phrase appears in a discussion that applied a "substantial interest aggrieved citizen" test and affirmed the lower court's finding that plaintiffs lacked standing. *Id.* at 91. Every case cited by Appellants held that public interest standing must be accompanied by some allegation of a special, individual interest, which these Appellants have simply failed to allege.

[¶58] We adhere to our standing analysis in *William F. West Ranch*, and continue to require parties to assert enough of a stake in the outcome to permit the judiciary to exercise jurisdiction over a case without exceeding its authority and violating separation of powers limitations. "If we were to rule that any matter of great public importance could be litigated under the Declaratory Judgments Act, we would be impermissibly extending our jurisdiction beyond that allowed under the act and the concept of justiciability firmly established in our jurisprudence." *William F. West Ranch*, 2009 WY 62, ¶ 47, 206 P.3d at 737. We affirm the district court's order dismissing the amended complaint of

Karl Allred and Gerald Gay because they lack standing.

## II. The district court did not abuse its discretion when it denied the motion to amend to add party plaintiff

[¶59] The decision to allow a plaintiff to amend his complaint "is vested within the sound discretion of the district court and subject to reversal on appeal only for an abuse of that discretion." *Foxley & Co. v. Ellis*, 2009 WY 16, ¶ 32, 201 P.3d 425, 433 (Wyo. 2009) (citation omitted). In denying a motion to amend a complaint, a district court "abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances." *Three Way, Inc. v. Burton Enters.*, 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008) (citation omitted).

[A] district court may refuse to allow amendment if it would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. . . . [W]here leave was denied based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility.

*Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (citations and quotation marks omitted).

[¶60] Appellants devote less than two pages of their brief on appeal to this issue, without a single citation to authority. Their argument is that Mr. Hornok had standing because he is entitled to bid on the contracts and "could not be awarded the contracts without the opportunity to bid on them." Construing the allegations in the light most favorable to Mr. Hornok, we could find that he has alleged an injury in that he was not awarded any of the contracts on the Capitol Square Project. His standing fails, however, on the second element of the *Brimmer* test. He has alleged no facts that would establish a judgment of the court would remedy that injury. He has not identified which contracts, if let for competitive bid, he would have bid on, nor has he alleged that he would have been the low or successful bidder on those contracts. Just as in *William F. West Ranch*, Appellants' proposed second amend-

ed complaint fails to "demonstrate that the controversy is one upon which a judgment of the court may effectively operate." 2009 WY 62, ¶ 26, 206 P.3d at 731. The amendment would have been futile, and the district court did not abuse its discretion when it denied the motion. Because we find that Mr. Hornok would have lacked standing, we do not address the district court's alternative finding that he failed to exhaust administrative remedies.

## CONCLUSION

[¶61] We affirm the district court's conclusion that Mr. Allred and Mr. Gay lack standing, and we find no error in the denial of their motion to amend to add a plaintiff. Because we conclude that there is no jurisdiction over this matter, we will not address the challenge to the constitutionality of Wyo. Stat. Ann. § 1-35-109.

KAUTZ, J., specially concurring.

[¶62] I concur in the opinion very ably written by Justice Fox. I write separately to provide my observations about the nature of standing requirements and the application of Wyoming's constitution to the issue of standing.

### Standing and Separation of Powers

[¶63] It is ironic that Appellants ask this Court to find they have standing to challenge a claimed violation of Wyoming's constitutional separation of powers provision, art. 2, § 1. In this request, they are asking this Court to go beyond the power granted it, potentially violating that very provision. The "judicial doctrine of standing is a crucial and inseparable element" of separation of powers. Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers,* 17 Suffolk U.L. Rev. 881, 881 (1983). "[T]he law of standing roughly restricts courts to their traditional undemocratic role of protecting individuals and minorities against impositions of the majority, and excludes them from the even more undemocratic role of prescribing how the other two branches should function in order to serve the interest of the majority itself." *Id.* at 894.

[¶64] Appellants claim that "it is the duty of courts of justice to declare void all legislative acts contrary to the manifest tenor of the constitution," (internal citation omitted) implying that such a duty automatically gives the court the power to hear a case brought by anyone who claims a statute violates the Wyoming Constitution. This approach suggests that constitutional limits on judicial authority and standing requirements may be ignored or dispensed with when they become obstacles to judicial review. The U.S. Supreme Court bluntly responds, "this philosophy has no place in our constitutional scheme." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 489, 102 S.Ct. 752, 767, 70 L.Ed.2d 700 (1982). Such an approach to defining the court's power would expand the court's authority over the other branches of government far beyond what is authorized in our constitution.

[¶65] Professor Robert P. George describes an additional problem arising from undisciplined expansion of standing in order to review the constitutionality of legislation:

"its practice tends to encourage the belief among legislators (and, worse still, among citizens more broadly) that the constitutionality of proposed legislation is not the concern of the people's elected representatives; if a proposed piece of legislation is unconstitutional, they say, then it is up to the courts to strike it down. But this is a travesty. For structural constraints to accomplish what they are meant to accomplish, for them to constrain the power of government as they are meant to do, the question of the constitutionality of legislation in light of those constraints is *everybody's* business—judges exercising judicial review, yes, but also legislators, executives, and the people themselves."[8]

Robert P. George, *Conscience and Its Enemies,* 24 (2016).

---

8. According to Appellants, a prior governor vetoed similar legislation believing it violated art.

2, § 1 of the Wyoming Constitution.

[¶66] Wyoming courts have only the authority granted by our constitution. *State v. True*, 26 Wyo. 314, 184 P. 229 (1919). Only when the authority exists to hear a cause should the courts determine whether a legislative or executive act is constitutional. But, even if the courts do not or cannot consider a particular claim of constitutionality, each branch of government must seriously consider the constitutionality of its actions.

[¶67] Although Wyoming's constitution takes a different approach from the U.S. Constitution when defining judicial authority (see below), the principles stated in cases discussing the U.S. Constitution describe the relationship between standing and judicial authority well. "The law of (standing) serves to prevent the judicial process from being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016), as revised (May 24, 2016) (internal citations omitted). "No principle is more fundamental to the judiciary's proper role in our system of government ...." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S.Ct. 1854, 1861, 164 L.Ed.2d 589 (2006). "In keeping with the purpose of this doctrine, '[o]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches ... was unconstitutional.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 1147, 185 L.Ed.2d 264 (2013). "Relaxation of standing requirements is directly related to the expansion of judicial power." *U.S. v. Richardson*, 418 U.S. 166, 188, 94 S.Ct. 2940, 2952, 41 L.Ed.2d 678 (1974) (Powell, J., concurring).

[¶68] "The proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974). This principle applies to Wyoming courts. In effect, Appellants urge the courts to find authority to decide claims of unconstitutionality without regard to the boundaries established by our constitution.

[¶69] The requirement that litigants present a justiciable controversy—that they have "standing"—is not and should not be an arbitrary process whereby the court decides if it deems a party or a case worthy of consideration. When deciding whether standing exists, the court is not deciding that it wants or does not want to hear a particular case. Rather, the court is recognizing that it has only the authority granted by the Wyoming Constitution, and is applying the rule of law whether it finds a case attractive or not.

[¶70] Appellants argue that if the court does not find standing in this case, decisions about standing have "the potential of devolving into an arbitrary process of flushing out cases the judiciary finds inconvenient." The opposite is true. If the court were to decide that standing exists simply because a party has claimed an issue is important, or constitutional, then the decision would be arbitrary, unconnected to any objective standard.

[¶71] Appellants further assert that if the courts do not determine that they have standing to challenge the constitutionality of the statutes in question, then no one will be able to do so. "The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing." *Schlesinger*, 418 U.S. at 227, 94 S.Ct. at 2925. Furthermore, it cannot be assumed that no one would have standing. There may be many individuals or entities directly impacted by the legislation.

### Wyoming's Constitution

[¶72] Article III of the U.S. Constitution limits the judicial power of U.S. government courts to certain "cases" and "controversies." This limitation means that parties in federal court must show an injury that is "concrete, particularized, and actual or imminent." *Clapper*, 568 U.S. at 409, 133 S.Ct. at 1140, quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010). This standing requirement is analogous to the first requirement of our *Brimmer* test.

[¶73] Wyoming's constitution does not utilize the terms "case" and "controversy," but provides a similar limitation on judicial power. Article 5, § 10 of the Wyoming Constitution establishes the authority of the general trial courts in our state: "The district court shall have original jurisdiction of all **causes**, both at law and in equity." (Emphasis added). Appellate authority is contained in art. 5, § 2 which provides that "The supreme court shall have general appellate jurisdiction ... in both civil and criminal **causes**." (Emphasis added). It logically follows that Wyoming courts do not have constitutional authority to act unless there is a **cause**.

[¶74] Our constitution delineates who may seek redress for wrongs in Wyoming courts in art. 1, § 8. There it states that every person may seek justice in our courts "**for an injury done to person, reputation or property.**" (Emphasis added.) Causes brought by plaintiffs against defendants which may come to court in Wyoming, then, are those where the claimant asserts some concrete, particularized, and actual or imminent injury. Or, put in terms of the first *Brimmer* requirement, Wyoming courts have authority to hear cases where a plaintiff has alleged injury to existing and genuine, as distinguished from theoretical, rights or interests. Where plaintiffs do not allege particularized injury to personal, non-theoretical rights, they do not have standing and Wyoming courts do not have authority.

[¶75] This limitation on judicial action is not unique. Rather, it restricts the judiciary to "the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Institute*, 555 U.S. 488, 492, 129 S.Ct. 1142, 1148, 173 L.Ed.2d 1 (2009). It is entirely consistent with the fundamentals of our constitutional government—limited government authority and separation of powers.