# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 74

APRIL TERM, A.D. 2017

June 21, 2017

MOOSE HOLLOW HOLDINGS, LLC,
f/k/a MOOSE HOLLOW, LLC and BLUE
SKIES WEST, LLC,

Appellants
(Petitioners),

v.

TETON COUNTY BOARD OF
COUNTY COMMISSIONERS,                    S-16-0238

Appellee
(Respondent),

and

JCFT WYOMING REAL ESTATE, LLC,

Appellee
(Intervenor).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellants:*
> Paula A. Fleck, Hadassah M. Reimer, and Matthew Kim-Miller of Holland & Hart LLP, Jackson, WY. Argument by Ms. Reimer.

*Representing Appellees:*
> Erin E. Weisman of Teton County Attorney's Office, Jackson, WY for Appellee Teton County Board of County Commissioners; and Stuart R. Day; Brian J. Marvel; and Erica Day of Williams, Porter, Day & Neville, P.C., Casper WY for Appellee-Intervenor JCFT Wyoming Real Estate, LLC. Argument by Ms. Weisman; Ms. Day; and Mr. Day.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Appellants Moose Hollow Holdings, LLC (Moose Hollow) and Blue Skies West, LLC (Blue Skies) own residential property in rural Teton County.  JCFT Wyoming Real Estate, LLC (JCFT) owns two parcels in the same area, one a 53.2-acre parcel, and the other a six-acre parcel.  At Appellants' request, the Teton County planning director issued a formal rule interpretation concerning a 2006 development permit associated with the JCFT property.  At JCFT's request, the planning director issued a zoning compliance verification (ZCV) concerning JCFT's six-acre parcel.  Appellants disagreed with the planning director's conclusions on both matters and appealed the rule interpretation and ZCV decision to the Teton County Board of County Commissioners (Board).

[¶2]    The Board found Appellants lacked standing to appeal either action and that their appeal of the ZCV decision was also untimely.  Based on those findings, the Board dismissed Appellants' appeals.  On review, the district court upheld the Board's dismissal on the same grounds.  We affirm the Board's standing ruling and further conclude that the planning director's rule interpretation and ZCV decision are not ripe for review.

## ISSUES

[¶3]    Appellants state the issues on appeal as:

> 1.    Whether the district court erred in holding that Appellants lack standing to bring their administrative appeals where further residential development will negatively impact Appellants' aesthetic, safety, and property interests?
> 2.    Whether the district court erred in holding that one of the administrative appeals was not timely filed even though Appellants filed the appeal just ten days after receiving notice of the decision?

## FACTS

[¶4]    Appellants and JCFT own property in rural Teton County near South Fall Creek Road.  JCFT's property consists of 59.2 acres divided into two parcels, a six-acre parcel and a 53.2-acre parcel, and is subject to a 37.8-acre conservation easement.  Appellants each own a 7.5-acre parcel adjacent to each other and the JCFT property.

[¶5]    JCFT purchased its property from the Chrystie Family, LLC (the Chrysties) in October 2014.  The Chrystie property was originally a single 59.2-acre parcel, but in 2007, the Chrysties, through conveyances using the statutory family subdivision exemption, divided the property into the two parcels, with recorded deeds for a six-acre parcel and a 53.2-acre parcel.  Thus, when JCFT purchased its property from the

1

Chrysties, it purchased two separately recorded parcels, a six-acre parcel and a 53.2-acre parcel.[1]

[¶6]    Concerned with potential development of the property now owned by JCFT, Appellants, on February 19, 2015, applied to the Teton County planning director for a formal interpretation of the Teton County Land Development Regulations (LDRs). Appellants asked the planning director to determine whether the development permit issued to the Chrysties in 2006, DEV2004-0024, had expired or remained a current development permit.  Because DEV2004-0024 issued when the Chrystie property was a single 59.2-acre parcel, it was understood that no development could proceed without an amendment to that permit, but Appellants took the additional position that the permit had expired and was not valid or subject to amendment to allow further development of the JCFT property.

[¶7]    While Appellants' request for a formal rule interpretation was pending, JCFT, on March 20, 2015, submitted an application to the planning director for a zoning compliance verification (ZCV).  Through that application, JCFT requested:

> **Question 1.**  Please confirm that the six-acre parcel created by Eliza Chrystie on May 31, 2007 pursuant to the family subdivision exemption of the Wyoming Subdivision Act constitutes a lawfully created parcel under the Wyoming Subdivision Act and the applicable Teton County LDRs in effect on May 31, 2006.
>
> * * *
>
> **Question 2.**  Please confirm that if the PRD approved under DEV2004-0024 is amended to exclude the six-acre tract, that the six-acre parcel is entitled to development rights of a total of 8,000 square feet of habitable space and 10,000 square feet of non-habitable space under the LDRs.

[¶8]    On April 17, 2015, the planning director responded to Appellants' request for a formal rule interpretation.  At the outset of his rule interpretation, the planning director described DEV2004-0024 as a permit approving "a 2-unit, non-subdivision Planned Residential Development (PRD) on 59.2 acres of land[.]"  Based on his review, he concluded DEV2004-0024 had not expired and "that the development rights permitted

---

[1] In May 2007, before the Chrysties recorded deeds subdividing their property, they submitted a family subdivision application to the planning director, to which the planning director responded by letter that same month.  In his response, the planning director noted that in 2006, a development permit, DEV2004-0024, had been approved for the Chrysties' 59.2-acre tract.  He advised that the family subdivision application could not be approved unless the Chrysties first obtained approval to amend the existing development permit, DEV2004-0024, to accommodate the reduced acreage.  That letter notwithstanding, the deeds subdividing the property were recorded.

under DEV2004-0024 have been vested and may be amended, pursuant to the current LDRs governing amendment of prior approvals." He explained his conclusion, beginning with the history of the permit's issuance:

> In June of 1999, the Chrysties applied for a building permit to construct an addition to the existing garage/storage building. A building permit (BP 1999-0286) was issued on July 13, 1999. In the Planning Department review of the building permit, staff made notes regarding the conversion of the existing garage/storage to caretaker's living quarters. The 1999 building permit did not approve or authorize this conversion. It merely acknowledges that the conversion has occurred for purposes of tracking habitable versus non-habitable floor area. The conversion of the unfinished garage/storage to a caretaker quarters resulted in the presence of one more dwelling unit on the property than was permitted under the LDRs. Review notes also indicate that pursuit of a PRD was suggested by staff, presumably to remedy the noncompliance with the limitation on dwelling units.
>
> On November 19, 2004, the Chrysties submitted an application for a Final Development Plan for a 2-unit PRD with 70% open space on 59.2 acres. The applicant proposed that the existing conservation easement recorded in 1993 and held by the Jackson Hole Land Trust serve to meet the open space requirement for the PRD. A permit for a 2-unit, non-subdivision PRD was issued on July 7, 2006 with six conditions of approval.

[¶9] The planning director then outlined the basis for his conclusion that DEV2004-0024 was a current and vested development permit, explaining, in part:

> Policy 1.4.c of the Comprehensive Plan establishes the community's primary goal to permanently protect and steward wildlife habitat, habitat connections, scenic viewsheds and agricultural open space. The policy also outlines the necessity of offering development incentives such as density bonuses to encourage the permanent protection of open space. The PRD tool is a development incentive through which the community gains permanently-protected and actively-stewarded open space in exchange for granting the land owner or developer additional density. The PRD tool continues to be supported by and is consistent with the

3

Comprehensive Plan. The community's interest, as stated in the Comprehensive Plan, is in the open space. Once the instrument permanently protecting the open space is recorded, the community's interests are satisfied. The conservation easement associated with this PRD was in place at the time the Development Permit was issued, and thus the Development Permit vested immediately upon approval.

\* \* \* \*

As described above, the purpose of a PRD is to promote denser and more efficient, clustered development patterns by providing additional density in exchange for the community benefit of protected open space, which helps achieve the wildlife, scenic and agricultural goals of the Comprehensive Plan. The community benefit is solely the protected open space. Once the open space restriction is recorded, the timing of the residential development itself is not important to the community, whose goals have already been met. \* \* \*

\* \* \* \*

The subject property is located within Character District 15: County Periphery. Future character in this district, as described in the Comprehensive Plan, should be rural, with a focus on open space. The Development Permit in question is for a 2-unit PRD, in which the permanent protection of open space is exchanged for clustered density. Flexibility to achieve desired future character within the protections of the LDRs is encouraged. This interpretation, which finds that the Development Permit is valid and may be amended, grants flexibility to the owner or developer in the timing of development once the conservation easement is secured. The PRD tool is consistent with the Comprehensive Plan and works to achieve the desired future character of this area. At the time of approval, the proposal was found compliant with the established protections of the LDRs. Any amendments proposed to DEV2004-0024 will be evaluated for compliance with all applicable standards of the LDRs prior to approval.

[¶10] On the same date the planning director issued his rule interpretation, he also issued his response to JCFT's ZCV request. He answered the first question, concerning the validity of the six-acre parcel as a family subdivision, in the affirmative, stating, "Pursuant to the attached memo, it is the opinion of the County Attorney's office that the six-acre parcel is legally recognizable by Teton County." The attached memo explained that the LDR review process for family subdivisions has no impact on whether a legal family subdivision exists and the former planning director's 2007 letter denying the

Chrystie subdivision application therefore "had no legal effect to invalidate the subsequent family subdivision which was recorded on the property."

[¶11] With regard to JCFT's second ZCV question, concerning the development rights associated with the six-acre parcel, the planning director concluded:

> Assuming it is possible to amend the PRD to exclude the 6-acre parcel, and pursuant to the formula for calculating Maximum Floor Area in Section 3.3.5.E.1 of the LDRs, staff has determined that the 6-acre parcel would be permitted a maximum of 10,000 square feet of total floor area, 8,000 square feet of which may be habitable. This calculation accounts for the area under easement on the property. As the maximum floor area of a single-family residential use on properties less than 10 acres may not exceed 10,000 square feet under any circumstances, amendment of the PRD to demonstrate that the 0.43 acres under easement on this parcel is not needed for the PRD to comply would not have any impact on the allowed floor area on this parcel. The maximum floor area permitted would remain 10,000 square feet.
>
> Maximum floor area is approved at the time of Building Permit, based on review of a surveyed site plan. Information identified in the survey that is not available on GIS may impact the maximum floor area calculation. Ability to achieve the maximum floor area on a property may be limited by other applicable standards of the LDRs including but not limited to setbacks, maximum site development, and maximum height. A development application must demonstrate compliance with all applicable standards of the LDRs prior to approval.

[¶12] On May 15, 2015, Appellants appealed the planning director's formal rule interpretation concerning DEV2004-0024 to the Teton County Board of County Commissioners (Board). Appellants took their appeal by way of a "petition for appeal," in which they alleged:

> 5. Contestants have standing because they are aggrieved parties as defined in Section 8.8.3 of the Teton County LDR's. Contestants own residential real property adjacent to a parcel of land, the owner of which is seeking to subdivide and upon which said owner asserts the right to develop

further residential structures in a location that will impair the market value and aesthetic value of Contestants' real properties. Contestants' interests are definite, tangible, substantial, immediate and pecuniary.

[¶13] On June 12, 2015, Appellants appealed the planning director's ZCV decision to the Board. Appellants again took their appeal by way of a "petition for appeal," and alleged:

> 5. Contestants have standing because they are aggrieved parties as defined in Section 8.8.3 of the Teton County LDR's. Contestants own residential real property adjacent to a parcel of land, the owner of which appears to have sought, via Z[C]V2015-0008, an opinion that a 6 acre parcel illegally created in 2007 is a legal parcel with full residential development rights. The Planning Director's decision in ZCV2015-0008 appears to (wrongfully) state that the said 6-acre parcel was lawfully created in 2007, and that under certain circumstances may be entitled to up to 10,000 square feet of residential development. The said lot and potential residential development is so situated as to, if allowed to proceed, will (sic) impair the market value and aesthetic value of Contestants' real properties. Contestants' interests are definite, tangible, substantial, immediate and pecuniary.

[¶14] JCFT was permitted to intervene in both appeals, and the appeals were consolidated for the Board's consideration. The planning director thereafter moved to dismiss Appellants' appeal of the ZCV decision, asserting Appellants lacked standing to appeal the decision. JCFT moved to dismiss Appellants' appeals of both the ZCV decision and the rule interpretation, asserting Appellants lacked standing to appeal either decision and also asserting Appellants' appeal of the ZCV decision was untimely.

[¶15] Appellants opposed the motions to dismiss and, in response to the standing allegations, attached affidavits from the sole owners of Moose Hollow and Blue Skies. Both affidavits attested to the owners' concerns that increased residential development on the JCFT property would make their access road unsafe and would result in loss of wildlife habitat and wildlife migration corridors. Each affiant also attested to a concern for the loss of "the scenic values currently preserved on that portion of [JCFT's] property that is west of my property and south of the access drive into my property."

[¶16] On September 8, 2015, the Board heard argument on the motions to dismiss, and on October 6, 2015, it issued an order dismissing the appeals. The Board found

Appellants did not timely appeal the ZCV decision and concluded it was therefore without jurisdiction to consider the ZCV decision. The Board further concluded that Appellants lacked standing to challenge either the rule interpretation or the ZCV decision:

> Contestants have not demonstrated how the Planning Department's decision specifically impairs their properties, nor have they presented any evidence indicating that they have view easements or other rights related to the aesthetics of their properties that JCFT would violate by developing the six-acre parcel in accordance with the governing LDRs.

[¶17] On November 5, 2015, Appellants filed a petition for review of the Board's dismissal order. On August 18, 2016, the district court issued its Order on Appeal, which affirmed the Board's decision. Appellants thereafter filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶18] We review a district court's ruling on an administrative appeal as if it came directly from the administrative agency. *Price v. State ex rel. Wyo. Dep't of Workforce Servs.*, 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017). Questions of standing, ripeness, and subject matter jurisdiction are questions of law. *Apodaca v. Safeway*, 2015 WY 51, ¶ 10, 346 P.3d 21, 23 (Wyo. 2015) (subject matter jurisdiction); *Miller v. Wyo. Dep't of Health*, 2012 WY 65, ¶ 42, 275 P.3d 1257, 1265 (Wyo. 2012) (ripeness); *Northfork Citizens for Responsible Dev. v. Park Cty. Bd. of Cty. Comm'rs*, 2008 WY 88, ¶ 6, 189 P.3d 260, 262 (Wyo. 2008) (standing). "[W]e review an agency's conclusions of law *de novo*, and will affirm only if the agency's conclusions are in accordance with the law." *Price*, ¶ 7, 388 P.3d at 790 (quoting *Worker's Comp. Claim of Bailey v. State ex rel. Wyo. Dep't of Workforce Servs.*, 2015 WY 20, ¶ 12, 342 P.3d 1210, 1213 (Wyo. 2015)).

[¶19] This Court's review of factual findings upon appeal depends on the procedure that led to the findings. Here, the Board did not hold an evidentiary hearing but instead ruled on motions to dismiss, motions that both JCFT and the planning director framed as Rule 12(b)(6) motions. Because Appellants responded to the motions with materials outside the pleadings, and the Board did not exclude those materials, we would normally treat this as a summary judgment ruling and apply that standard of review. The motions to dismiss and outside materials were not, however, directed to the merits of Appellants' claims but were instead directed to the Board's subject matter jurisdiction. We thus find it more fitting to treat the motions as Rule 12(b)(1) motions, for which no conversion is required. *See Apodaca*, ¶ 9, 346 P.3d at 23 (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)) (" [I]n ruling on a W.R.C.P. 12(b)(1) motion to dismiss for lack of

subject matter jurisdiction, materials outside the complaint, such as affidavits and other documents, may be considered.").

[¶20] We review a Rule 12(b)(1) dismissal in the same manner we would review a Rule 12(b)(6) dismissal:

> * * * Our review is *de novo,* and we employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint or petition as true and view them in the light most favorable to the non-moving party.

*Guy v. Lampert*, 2015 WY 48, ¶ 12, 362 P.3d 331, 335 (Wyo. 2015).

## DISCUSSION

### A. Standing and Ripeness

[¶21] The Wyoming Administrative Procedure Act limits standing to appeal agency action to one who is "aggrieved or adversely affected" by that action. Wyo. Stat. Ann. § 16–3–114(a) (LexisNexis 2015). We have defined this standing requirement to mean:

> A litigant is "aggrieved or adversely affected in fact" by an agency action if he has a "legally recognizable interest in that which will be affected by the action." *Roe v. Bd. of County Comm'rs, Campbell County*, 997 P.2d 1021, 1023 (Wyo.2000) (citation omitted). In order to establish standing for judicial review of an agency action, a litigant must show injury or potential injury by " 'alleg[ing] a perceptible, rather than speculative, harm resulting from agency action.' " *Hoke v. Moyer*, 865 P.2d 624, 628 (Wyo.1993), quoting *Foster's Inc. v. City of Laramie*, 718 P.2d 868, 872 (Wyo.1986). " 'The interest which will sustain a right to appeal must generally be substantial, immediate, and pecuniary. A future, contingent, or merely speculative interest is ordinarily not sufficient.' " *L Slash X Cattle Co., Inc. v. Texaco, Inc.*, 623 P.2d 764, 769 (Wyo.1981), quoting 4 Am.Jur.2d Appeal and Error § 180. Specifically in the context of zoning or land use planning,
>
> > [a]n aggrieved or adversely affected person having standing to sue is a person who has a legally recognizable interest that is or will be affected by the

8

action of the zoning authority in question. An individual having standing must have a definite interest exceeding the general interest in community good shared in common with all citizens.

1074 E.C. Yokley, 4 *Zoning Law and Practice* § 24–3 at 194 (4th ed.1979) (footnote omitted).

*Hoke*, 865 P.2d at 628.

*N. Laramie Range Found. v. Converse Cty. Bd. of Cty. Comm'rs*, 2012 WY 158, ¶ 24, 290 P.3d 1063, 1073-74 (Wyo. 2012).[2]

[¶22] Intertwined with the requirement of standing is the requirement of ripeness, and both requirements must be satisfied to establish that a dispute is fit for judicial review. *Internat'l Assoc. of Firefighters Local Union No. 279 v. City of Cheyenne*, 2013 WY 157, ¶ 21, 316 P.3d 1162, 1169 (Wyo. 2013); *see also Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1144 (Wyo. 1998). With regard to ripeness, we have explained:

The ripeness doctrine is a category of justiciability "developed to identify appropriate occasions for judicial action." 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3529, p. 146 (1975). The basic rationale of the ripeness requirement, like that of the justiciability requirement, "* * * is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also ***to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties***. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of

---

[2] The Teton County Land Development Regulations (LDRs) echo this limitation on standing to appeal, defining an aggrieved person as:

a person who has a legally recognizable interest affected by the decision or interpretation. The interest shall be definite and tangible, and exceed the general interest in the community good shared by all persons. Generally, it must be substantial, immediate, and pecuniary.

Teton County LDRs § 8.8.3.

withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

*Wyodak Res. Dev. Corp. v. Dep't of Revenue*, 2017 WY 6, ¶ 63, 387 P.3d 725, 739 (Wyo. 2017) (quoting *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 136, ¶ 8, 100 P.3d 848, 850-51 (Wyo. 2004)) (emphasis added).

[¶23] As discussed above, we must accept Appellants' allegations as true and give those allegations every favorable inference. Even doing so, however, it is clear that Appellants lack standing to challenge the planning director's rule interpretation and ZCV decision and neither action is ripe for review.

## 1. <u>Standing</u>

[¶24] As their first basis for standing, Appellants contend that because they requested the planning director's rule interpretation, it follows that they must have standing to appeal the adverse interpretation. We disagree.

[¶25] We look to the governing statutes and rules to determine who has an interest sufficient to confer standing to challenge an agency action. *N. Laramie Range Found.*, ¶ 23, 290 P.3d at 1073. Appellants cite to no statute or LDR provision that allows a right to appeal based on a party's role in requesting a rule interpretation, and in our review of the LDRs we found no such right. By both statute and rule, the right to appeal a rule interpretation is based solely on a showing of the requisite injury, and we therefore reject Appellants' first asserted basis for standing.

[¶26] As to injuries stemming from the planning director's decisions, Appellants allege increased housing density, loss of scenic views, loss of wildlife habitat and migration corridors, and dangerous conditions created by increased traffic on their access road. Even accepting these allegations as true, we find them insufficient to establish Appellants' standing.

[¶27] Assuming the harms Appellants allege are true, they are harms that would flow from development, and neither the planning director's rule interpretation nor his ZCV decision approved development. The planning director's rule interpretation stated only that DEV2004-0024 "is valid and may be amended." It added that any such proposed amendment "will be evaluated for compliance with all applicable standards of the LDRs prior to approval." Similarly, the ZCV decision contained no guarantee of development. It deemed the six-acre parcel legally recognizable by the county, but it also conditioned any development on an approved amendment of DEV2004-0024 to allow development of the 53.2-acre parcel without the six-acre parcel, and an approved permit to develop the six-acre parcel. In addition to the limiting language of the ZCV decision itself, the LDRs

10

also limit the effect of a ZCV decision, stating that "[a] zoning compliance verification does not permit any physical development, use, development option, or subdivision, nor does it guarantee approval of any application." Teton County LDRs § 8.6.2.D.

[¶28] With the issuance of just the rule interpretation and ZCV decision, we are not at a point in the decision-making process where we can know whether the Teton County planning director or department will approve development on either JCFT parcel. If development were to be approved on either parcel, we do not know what the permitted location of any permitted building would be on either parcel, and we of course do not know what conditions would be placed on the development to address setback requirements, road safety, or any other matter of concern. It is thus clear that, without an approved development permit, and without knowing the conditions placed on such permit, Appellants alleged harms are both contingent and speculative and thus insufficient to confer standing. *See Wyodak*, ¶ 60, 387 P.3d at 738 (quoting *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 136, ¶ 7, 100 P.3d 848 at 850 (Wyo. 2004)) ("The interest which will sustain a right to appeal must generally be substantial, immediate, and pecuniary. A future, contingent, or merely speculative interest is ordinarily not sufficient.").

## 2. **Ripeness**

[¶29] With respect to the ripeness question, this is a two-part inquiry requiring that we consider: 1) fitness of the issues for judicial decision; and 2) hardship to the parties from withholding court consideration. *Wyodak*, ¶ 63, 387 P.3d at 739. Both considerations warrant a conclusion that Appellants' challenges to the planning director's decisions are not ripe for review.

[¶30] First, the planning director's decisions were preliminary decisions in determining what, if any, development *might* be permitted on the JCFT parcels. We do not yet have an approved development permit to review, and we do not know what conditions might be placed on such a permit. A judicial decision at this stage would be premature and would interrupt the County's process for evaluating development. It would also entangle this Court in abstract disagreements over administrative policies, such as the effect of a permit expiration date, or the county's role in reviewing family subdivisions. These are questions that should be fully addressed and resolved at an administrative level, which we anticipate would occur if the planning director's rule interpretation and ZCV decision lead to the issuance of development permits.[3]

---

[3] In this regard, we found no indication in our review of the governing LDRs that, absent immediate judicial review, the planning director's rule interpretation and ZCV decision are binding on the Board, which is consistent with Teton County's position during oral argument that planning director rule interpretations and ZCV decisions are not binding on the Board.

[¶31] Additionally, we are unable to find hardship to Appellants from withholding judicial review at this stage. As we just noted, the planning director's rule interpretation and ZCV decision are not binding on the Board. Should a development permit be approved and Appellants establish standing to challenge such permit, Appellants may once again assert their disagreement with the planning director's rule interpretation and ZCV decision.

**B.      Timeliness of Appellants' ZCV Appeal**

[¶32] Because we conclude Appellants lacked standing to challenge the planning director's ZCV decision and that such decision was not ripe for judicial review, we need not address the timeliness of Appellants' appeal of the ZCV decision.

## CONCLUSION

[¶33] Appellants lacked standing to challenge the Teton County planning director's rule interpretation and ZCV decision, and neither decision was ripe for judicial review. Affirmed.