# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 13

OCTOBER TERM, A.D. 2023

January 31, 2024

CITY OF LARAMIE, WYOMING,

Appellant
(Plaintiff),

v.

UNIVERSITY OF WYOMING and
UNIVERSITY OF WYOMING BOARD OF
TRUSTEES,

Appellees
(Defendants).

S-23-0062

*Appeal from the District Court of Albany County*
*The Honorable Misha E. Westby, Judge*

*Representing Appellant:*
> Thomas Szott and Korry D. Lewis of The Bernhoft Law Firm, S.C., Cheyenne, Wyoming. Argument by Mr. Szott.

*Representing Appellees:*
> Patrick J. Crank and Abbigail C. Forwood of Crank Legal Group, P.C., Cheyenne, Wyoming. Teresa R. Evans, University of Wyoming General Counsel, Laramie, Wyoming. Argument by Mr. Crank.

*Representing the Attorney General's Office Pursuant to W.R.A.P. 7.07:*
> Bridget L. Hill, Attorney General; D. David DeWald, Deputy Attorney General; Christoper M. Brown, Senior Assistant Attorney General; Abigail C. Boudewyns, Senior Assistant Attorney General. Argument by Ms. Boudewyns.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    The City of Laramie (the City) appeals from the district court's orders dismissing some of its claims and granting summary judgment on its remaining declaratory judgment claims against the University of Wyoming and its Board of Trustees (collectively the University) pertaining to the drilling and operation of specified water wells.  The City contends the district court erred when it found legislation exempting the University from the application of a city ordinance pertaining to the operation of those wells constitutional. The City also asserts the district court erred when it determined the City could not enforce a covenant in a 1965 deed, which prohibited the University from drilling one of the wells, due to sovereign immunity.  We affirm.

## ISSUES

[¶2]    The parties raise a number of issues, which we consolidate and rephrase as follows:

> I.    Does sovereign immunity preclude the City from enforcing the restrictive covenant in the 1965 deed?
>
> II.   Is Wyoming Statute § 21-17-126 unconstitutional as a "special law" under Article 3, § 27 of the Wyoming Constitution?
>
> III.  Is Wyoming Statute § 21-17-126 unconstitutional as an impermissible delegation of municipal power under Article 3, § 37 of the Wyoming Constitution?
>
> IV.   Can the City enforce Laramie Municipal Code § 13.04.360 against the University?

## FACTS

[¶3]    Dating back to Wyoming's territorial days, the Union Pacific Railroad (Union Pacific) owned large portions of land in Albany County, including all of Section 35, Township 16 North, Range 73 West of the 6th P.M.  Water sources known as the City Springs are located underneath the southern half of Section 35, and both Union Pacific and the City appropriated water from the City Springs under an adjudicated 1868 water right.

[¶4]    On October 26, 1965, Union Pacific donated the north half of Section 35, Township 16 North, Range 73 West of the 6th P.M. to the University to be used "as a part of the campus" of the University.  The deed contained a restrictive covenant prohibiting the premises from being used for the construction, maintenance, or operation of water wells (the 1965 Covenant).

1

[¶5]    In the spring of 2019, the University filed two applications with the State Engineer's Office to drill two test wells: Well A and Well B.  Well B is located in Section 35.  The applications were approved, and the wells were completed.  In the fall of 2019, the University filed applications with the State Engineer's Office to convert these wells to production wells.  The applications indicated the ground water from the wells would be comingled with other University wells and used to water athletic fields, lawns, trees, shrubs, and flowers, on University lands, including the Jacoby Golf Course.

[¶6]    In August of 2020, the City passed Laramie Municipal Code § 13.04.360 (the City Ordinance), which provides in pertinent part:

> It is unlawful to do the following unless a franchise or permit is granted by the city council upon a determination that such franchise or permit is in the best interest of the city:
>
> A. To develop, drill, construct, operate, maintain, or use any water line, system, well, or works within the corporate limits of the city in order to sell, distribute, provide, or use nonmunicipal water (potable and/or non-potable) within the city;
>
> B. To interconnect any building, facility, landscape, lot, premises, or structure of any kind within the corporate limits of the city to any water line, system, well, or works other than to the city's water utility; or
>
> C. To use any portion of the city's streets, alleys, easements, or rights-of-way, or other property owned or managed by the city, for such purposes.

[¶7]    In November of 2020, the State Engineer's Office granted the University's applications to convert Wells A and B into production wells.  The State Engineer capped the amount of water the University could use from Wells A and B and other University wells at 540 acre-feet annually.

[¶8]    In the following months, the City and the University discussed the City's concerns about the University's operation of Wells A and B and the potential application of the City Ordinance to the University, but they were ultimately unable to reach a resolution.  In March 2021, the legislature passed what became Wyoming Statute § 21-17-126 (LexisNexis 2021). 2021 Wyo. Sess. Laws. Ch. 93, § 1.  The statute reads:

> (a)  Subject to title 41 of the Wyoming statutes and

2

notwithstanding any municipal or county ordinance, the University of Wyoming may:

(i) Develop, drill, construct, operate, maintain and use any water line, system, well or works on property owned by the university for the purposes of distributing, providing and using nonpotable water on property owned or leased by the university for miscellaneous use where water is to be used for landscape watering, lawns, athletic fields, trees, shrubs and flowers;

(ii) Connect a building, facility, landscape, lot, premises or structure owned by the university to any water line, system, well or works operated, maintained or used by the university.

(b) No city or county shall restrict or prohibit the university from developing, drilling, constructing, operating, maintaining or using any water system independent of the city's or county's water system.

[¶9]   The legislature also amended Wyoming Statute § 15-7-701, which gives a city the authority to grant the right to construct, maintain, and operate waterworks within the city to a corporation, by adding subsection (d). 2021 Wyo. Sess. Laws. Ch. 93, § 1.  The new subsection reads: "Nothing in this article shall be construed to restrict, prohibit or otherwise affect the rights of the University of Wyoming under W.S. 21-17-126." Wyo. Stat. Ann. § 15-7-701(d) (LexisNexis 2021).

[¶10]  The City filed this action in June 2021 seeking the following relief: 1) a declaration it has the right to enforce the 1965 Covenant and prohibit the University from producing water from Well B without the City's consent; 2) a declaration Wyoming Statute § 21-17-126 is unconstitutional; 3) a declaration the University has to comply with the City Ordinance; 4) a declaration the City has the right to prohibit the University's pipeline from crossing the City's right-of-way from the State for its transmission line or 30th Street without its consent; and 5) a preliminary injunction preventing the University from producing water from Wells A and B while the suit was pending.

[¶11]  The University moved to dismiss all the City's claims under Rule 12(b)(6) of the Wyoming Rules of Civil Procedure (W.R.C.P.).  The district court entered an order dismissing four of the City's claims.  The district court found Wyoming Statute § 21-17-126 was constitutional under both Article 3, § 27 and Article 3, § 37 of the Wyoming Constitution.  The district court also found the City failed to exhaust its administrative remedies before the Office of State Land and Investments, Board of Land Commissioners,

3

so its claims regarding whether the University could cross the City's transmission line right of way had to be dismissed. The district court also found the City failed to allege the University planned to cross 30th Street in order to connect the new wells to its existing irrigation system, so this claim had to be dismissed.[1] The only two claims that survived the motion to dismiss were: 1) whether the City had the right to enforce the drilling restrictions contained in the 1965 Covenant as a third-party beneficiary,[2] and 2) whether the University had to comply with the City Ordinance.

[¶12]   After the district court granted the motion to dismiss in part, the University filed four counterclaims. The University alleged: 1) the City did not have the authority to regulate the University, which was a constitutionally created sovereign entity; 2) the City did not have statutory authority to pass the City Ordinance; 3) the City had no standing to be granted declaratory relief because it failed to exhaust its administrative remedies before the State Engineer related to any alleged interference with its water rights caused by Wells A and B; and 4) Wyoming Statutes §§ 21-17-126 and 15-7-701(d) expressly prohibited the City from regulating the University's use of non-potable water to irrigate University lands.

[¶13]   The University moved for summary judgment under W.R.C.P. 56 or for judgment on the pleadings under W.R.C.P. 12(c) on all its counterclaims and on the City's two remaining claims. The University argued it was entitled to judgment as a matter of law on all its counterclaims and the City's remaining claims because the City Ordinance was not enforceable against the University, and the City could not enforce the 1965 Covenant because the University enjoyed sovereign immunity from breach of contract actions at the time the deed was executed. The City filed its own motion for partial summary judgment on the University's second counterclaim, arguing it had both constitutional and statutory authority to pass the City Ordinance.

[¶14]   The district court granted summary judgment in favor of the University, finding the City's action to enforce the 1965 Covenant could only be brought through an action for breach of contract. The district court ruled the City could not enforce the 1965 Covenant because the University had sovereign immunity from suits for breach of contract in 1965. Therefore, even if the City could establish it was a third-party beneficiary to the contract, it could not assert a right the original party to the contract did not possess.

---

[1] The City did not appeal the dismissal of its claim pertaining to the crossing of 30th Street. However, if we find Wyoming Statute § 21-17-126 is constitutional, the City asks us to find it would not apply to the University's proposed water system. The City asserts Wyoming Statute § 21-17-126 only applies if the University's water system is completely "independent" of the City's water system, and the University's proposed water system does not satisfy this criterion because it would involve placing a pipeline under 30th Street. We cannot find anywhere in the designated record where this argument was raised below, so we will not address it. *In re VS*, 2018 WY 119, ¶ 25, 429 P.3d 14, 21–22 (Wyo. 2018) (quoting *In re ECH*, 2018 WY 83, ¶ 21, 423 P.3d 295, 302 (Wyo. 2018)) (holding we will not address issues not raised below).
[2] The district court found the issue of whether the University was a third-party beneficiary to the deed was not ripe to be decided at the motion to dismiss stage of the case.

[¶15]  Turning to the City Ordinance, the district court found the issue was resolved by the passage of Wyoming Statute § 21-17-126.  Under that statute, the University did not have to comply with the City Ordinance because the statute specifically prohibited the City from enforcing the ordinance against the University.  The district court granted the University's motion for summary judgment on this issue and denied the City's motion for partial summary judgment regarding the validity of the City Ordinance.  This appeal timely followed.

## STANDARD OF REVIEW

[¶16]  The City asks us to review the district court's decisions dismissing certain claims pursuant to W.R.C.P. 12(b)(6) and granting summary judgment on other claims under W.R.C.P. 56.  We review a motion to dismiss under Rule 12(b)(6) de novo. *Allred v. Bebout*, 2018 WY 8, ¶ 29, 409 P.3d 260, 268 (Wyo. 2018).  When reviewing a motion to dismiss, we examine the same materials and apply the same standards as the district court. *Id*. (quoting *Moose Hollow Holdings, LLC v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017)).  "[W]e accept the facts alleged in the complaint or petition as true and view them in the light most favorable to the non-moving party." *Id*. (quoting *Moose Hollow Holdings, LLC*, ¶ 20, 396 P.3d at 1033).

[¶17]  "The question of whether a statute is constitutional is a question of law over which this Court exercises de novo review." *Hardison v. State*, 2022 WY 45, ¶ 5, 507 P.3d 36, 39 (Wyo. 2022) (quoting *Vaughn v. State*, 2017 WY 29, ¶ 7, 391 P.3d 1086, 1091 (Wyo. 2017)) (italics removed).  "Statutes are presumed to be constitutional, and we will resolve any doubt in favor of constitutionality." *Id*. (quoting *Vaughn*, ¶ 7, 391 P.3d at 1091).  As the party challenging the constitutionality of the statute, the City bears the heavy burden of "clearly and exactly" showing the statute is unconstitutional. *Id*. (citing *Michael v. Hertzler*, 900 P.2d 1144, 1146 (Wyo. 1995)).

[¶18]  Similarly, "[w]e review a district court's ruling on summary judgment de novo." *Falkenburg v. Laramie Inv. Co., Inc.*, 2023 WY 78, ¶ 5, 533 P.3d. 511, 514 (Wyo. 2023) (quoting *Wilcox v. Sec. State Bank*, 2023 WY 2, ¶ 26, 523 P.3d 277, 284 (Wyo. 2023)).  "We give no deference to the district court's ruling, evaluate the same materials, and apply the same standards as the district court." *Id*. (citing *Wilcox*, ¶ 26, 523 P.3d at 284).  When reviewing a summary judgment ruling, "[t]he record is assessed from the vantage point most favorable to the party opposing the motion, and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record." *Id*. at ¶ 6, 533 P.3d at 515 (quoting *Wilcox*, ¶ 26, 523 P.3d at 284).  The burdens of the respective parties in supporting or opposing summary judgment are well established:

> The party moving for summary judgment bears the burden of establishing a prima facie case and showing there is no genuine

5

> dispute as to any material fact and the movant is entitled to judgment as a matter of law. Once that burden is met, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. When the moving party does not have the ultimate burden of persuasion, it establishes a prima facie case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim.

*Id.* (quoting *Wilcox*, ¶ 26, 523 P.3d at 284).

## **DISCUSSION**

### I. *Does Sovereign Immunity Preclude the City from Enforcing the Restrictive Covenant in the 1965 Deed?*

[¶19]  The City asserts the district court erred when it granted summary judgment in favor of the University regarding the enforcement of the 1965 Covenant because, under the law that existed in 1965, the University only enjoyed sovereign immunity when performing "governmental" functions not "proprietary" functions. The City argues the operation of a water well is a proprietary function, particularly when it is used to water a golf course that generates fees. As such, the City contends the University does not have sovereign immunity, and we should remand this case for a trial on the issue of whether the City may enforce the 1965 Covenant. The City admits it did not raise the governmental versus proprietary argument below. However, it asserts we should consider this issue for the first time on appeal because the issue of sovereign immunity is jurisdictional.

[¶20]  The University argues we should not consider the governmental versus proprietary argument because the City waived this issue by not raising it below. Typically, we decline to consider an issue raised for the first time on appeal unless the issue raises a jurisdictional question or is of such a fundamental nature that it must be considered. *In re VS*, 2018 WY 119, ¶ 25, 429 P.3d at 21–22 (quoting *In re ECH*, 2018 WY 83, ¶ 21, 423 P.3d at 302). "We follow this rule because 'it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court.'" *Fowles v. Fowles*, 2017 WY 112, ¶ 28, 402 P.3d 405, 412 (Wyo. 2017) (quoting *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 19, 367 P.3d 619, 624 (Wyo. 2016)). In this case, the issue of sovereign immunity was raised below, although the governmental versus proprietary argument was not. As the moving party, the University had the burden of showing it was entitled to invoke sovereign immunity to prevent the enforcement of the 1965 Covenant. *See* W.R.C.P. 56(a); *Falkenburg*, 2023 WY 78, ¶ 5, 533 P.3d. at 514. Due to the law that applies to the 1965 Covenant, we are required to analyze the City's governmental/proprietary argument to determine if the University met this burden.

6

[¶21] "There is perhaps no common law doctrine more time honored than the doctrine of sovereign immunity." *Campbell Cnty. Mem'l Hosp. v. Pfeifle*, 2014 WY 3, ¶ 17, 317 P.3d 573, 578 (Wyo. 2014). "[T]he doctrine of sovereign immunity has its 'roots in the ancient common law of England which held "The King can do no wrong" and hence could not be sued in any court of law.'" *Id.* (quoting *Worthington v. State*, 598 P.2d 796, 803 (Wyo. 1979)). As we have recognized, "the King does 'do wrong,' but the right to seek redress for such wrong is determined by the policy and will of the legislative body." *Id.* at ¶ 18, 317 P.3d at 578.

[¶22] The concept of sovereign immunity is embodied in the Wyoming Constitution. Article 1, § 8 of the Wyoming Constitution provides in relevant part: "Suits may be brought against the state in such manner and in such courts as the legislature may by law direct." We have repeatedly held this provision "requires explicit legislative authorization before a suit can be maintained against the state." *Wyo. State Hosp. v. Romine*, 2021 WY 47, ¶ 15, 483 P.3d 840, 845 (Wyo. 2021) (quoting *Vigil v. Ruettgers*, 887 P.2d 521, 524 (Wyo. 1994)) (italics removed). Absent the State's consent, no suit or claim can be made against the State. *Campbell Cnty. Mem'l Hosp.,* 2014 WY 3, ¶ 17, 317 P. 3d at 578 (quoting *Worthington*, 598 P.2d at 801). Recognizing "the inherently unfair and inequitable results which occur in the strict application of governmental immunity," the Wyoming Legislature abrogated the common law of sovereign immunity and authorized suits against the State in certain circumstances when it passed the Wyoming Governmental Claims Act (WGCA), now codified at Wyoming Statutes §§ 1-39-101 to 1-39-120 (LexisNexis 2023). *Heimer v. Antelope Valley Improvement*, 2010 WY 29, ¶ 15, 226 P.3d 860, 863 (Wyo. 2010). Because the deed at issue in this case was executed before the WGCA was enacted, both parties concede this Court should apply sovereign immunity principles that predated the WGCA. *See Oyler v. State*, 618 P.2d 1042, 1045 n.9 (Wyo. 1980) (applying common law sovereign immunity because the WGCA was not the law of Wyoming at the time of the facts relevant to that case).

[¶23] At the time the deed was executed in 1965, the University enjoyed common law sovereign immunity because a suit against the University was a suit against the State. *Biscar v. Univ. of Wyo. Bd. of Trs.*, 605 P.2d 374, 375 (Wyo. 1980) (citing *Retail Clerks Local 187 v. Univ. of Wyo.*, 531 P.2d 884, 886 (Wyo. 1975)). However, like all other state or municipal entities, the University could lose this immunity if it was engaged in a "proprietary function" rather than a governmental function. *Id.* at 376 (citing *Nat'l Surety Co. v. Morris*, 241 P. 1063, 1067 (1925)). A proprietary function is one where the state "places itself in the same class and on the same footing with private individuals in connection with its property rights . . . ." *Id.* (quoting *Nat'l Surety Co.*, 241 P. at 1067). Determining whether a government entity was engaged in a governmental or proprietary function can be difficult. Generally, if the activity is "concerned with the health and welfare of the public at large," or if "the activity has been undertaken at the direction of the legislature or involves legislative or judicial discretion," it is considered governmental.

7

*Id.* (internal citations omitted). In addition, when the government entity is engaged in a "constitutionally mandated" function, it is considered governmental. *Id.* at 377 (finding the University was engaged in a governmental activity when it was engaged in the constitutionally mandated function of hiring professors); *see also Harrison v. Wyo. Liquor Comm'n*, 177 P.2d 397, 402–05 (Wyo. 1947) (finding the Liquor Commission was engaged in a governmental function when it purchased liquor pursuant to its constitutional mandate to regulate and control the sale of liquor). On the other hand, if "the activity has historically been carried on by a private corporation, or if it generates fees" it is considered proprietary. *Biscar,* 605 P.2d at 376 (internal citations omitted).

[¶24] The parties disagree about which activity this Court should look at when determining whether the University was engaged in a governmental activity. The City asks us to look at the University's activity in 2019, not 1965, and find operating a well to water the Jacoby Golf Course, which charges fees, is a proprietary function. The University contends the Court must examine the "facts in the time frame when the action actually took place[,]" in 1965 and not the facts regarding how the property was being used in 2019–2023. The University contends its acquisition of the property in 1965 was "clearly governmental," it had absolute sovereign immunity at the time it obtained the property from the Union Pacific, and the City cannot enforce the 1965 Covenant.

[¶25] Our previous cases examining the proprietary/governmental distinction reviewed the facts in the time frame when the action took place. *See Town of Douglas v. York,* 445 P.2d 760, 761–63 (Wyo. 1968) (evaluating whether garbage disposal was governmental or proprietary); *Bondurant v. Bd. of Trs. of Mem'l Hosp. of Converse Cnty.*, 354 P.2d 219, 220–22 (Wyo. 1960) (evaluating whether operating a hospital where the decedent was injured was a governmental function); *Town of Pine Bluffs v. State Bd. of Equalization*, 333 P.2d 700, 708–12 (Wyo. 1958) (evaluating whether municipality owned "electric light property" in a governmental or proprietary capacity for purposes of a tax statute); *Villalpando v. City of Cheyenne*, 65 P.2d 1109, 1111–16 (Wyo. 1937) (evaluating whether a city was acting in a governmental function when its employees, who were engaged in maintaining roads, negligently injured a motorist); *Wikstrom v. City of Laramie*, 262 P. 22, 23–24 (Wyo. 1927) (evaluating whether the wrongful revocation of a building permit was a governmental function); *Ramirez v. City of Cheyenne*, 241 P. 710, 711–15 (Wyo. 1925) (evaluating whether a city was acting in a governmental capacity when maintaining a playground). Two cases involving contracts looked at the activity the government entity was engaged in at the time it entered into those contracts. *See Biscar*, 605 P.2d at 376–77 (looking at whether the University was engaged in a governmental function when it negotiated employment contracts with professors); *Harrison*, 177 P.2d at 403–05 (looking at whether the Wyoming Liquor Commission was engaged in a governmental function at the time it entered into a contract to purchase alcohol).

[¶26] Following this precedent and looking at the activity the University was engaged in at the time it entered into the contract in 1965 leads to the conclusion the University was

8

engaged in a governmental activity. When the University accepted the property from Union Pacific, it did so to acquire the property to "use as part of the campus" of the University. Article 7, § 15 of the Wyoming Constitution specifically recognizes land will be donated or granted to the University and provides that ownership of the land "shall vest" in the University. Similarly, Wyoming Statute § 21-17-203 gives the Trustees the "powers necessary or convenient to accomplish the objects and perform the duties prescribed by law, and shall have the custody of the . . . property of the university." Wyoming Statute § 21-17-204(a)(iv) gives the Board of Trustees the power to "[h]old, manage, lease or dispose of, according to law, any real or personal estate as is conducive to the welfare of the institution[.]" By accepting the land to be used as part of the campus, the University was engaged in a constitutionally mandated function, which was undertaken at the direction of the legislature, making it a governmental function. *Biscar*, 605 P.2d at 376–77; *Harrison*, 177 P.2d at 403–05. Any suit brought to enforce a covenant contained in that deed is barred by sovereign immunity. *See Biscar*, 605 P.2d at 377.

[¶27]   This case is different than all our previous cases because the alleged breach occurred more than fifty years after the deed was executed. In addition, although the land is still being used as part of the University's campus, the activities conducted thereon have changed. Wyoming is somewhat unique in applying the governmental/proprietary distinction in contract actions and in applying the doctrine to the State itself and not just political subdivisions. *See generally* 1 Civ. Actions Against State & Loc. Gov't § 2:1 (Sep. 2023 Update) ("Under common-law principles, a distinction was made between governmental functions, as to which immunity applied, and proprietary functions, as to which governmental entities could be subject to tort liability. This distinction ordinarily applied only to political subdivisions of the state, particularly municipal corporations, and not to the state and its agencies.") The doctrine is generally applied in tort cases where the courts "examine the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred." 57 Am. Jur. 2d *Municipal, County, School, and State Tort Liability* § 45 (Oct. 2023 Update). If we followed this authority, we would look at the University's activity in 2019–2023. Doing so does not change the outcome.

[¶28]   The University is not operating the water wells to generate income or to perform an activity historically conducted by a private corporation. The wells are used for watering University landscaping, including athletic fields, trees, shrubs, flowers, and the Jacoby Golf Course. The University was created by the Wyoming Constitution. Wyo. Const. art. 7, § 15. The Wyoming Constitution requires the legislature to "provide by law for the management of the university, its lands and other property . . . ." Wyo. Const. art. 7, § 17. As discussed above, Wyoming Statute § 21-17-203 gives the Board of Trustees the "powers necessary or convenient to accomplish the objects and perform the duties prescribed by law . . . ." The Wyoming Constitution also requires instruction at the University be furnished "as nearly free as possible" and allows "any amount in addition to the income from its grants of lands and other sources above mentioned, necessary to its

9

support and maintenance in a condition of full efficiency [to] be raised by taxation or otherwise, under provisions of the legislature." Wyo. Const. art. 7, § 16. Watering University landscaping falls under the University's constitutionally mandated function of managing University lands and property and is part of keeping it "in a condition of full efficiency." A portion, or even a majority of the water from these wells may be used to water the Jacoby Golf Course, which does generate fees. However, that does not automatically transform watering University landscaping into a proprietary activity. In *Town of Pine of Bluffs* we stated:

> [W]e start with this premise: Any activity of the sovereign authority, or one to whom its powers are delegated, is presumed to be governmental; and it follows, we think, that if there be uncertainty as to the classification into which the particular activity falls, the doubt should be resolved in favor of its being governmental rather than proprietary, for the reason that the usual function of government is to act in the interest of the public as a whole. . . [W]here a service is rendered by a municipality gratuitously and for the public welfare generally, such service should be considered governmental.

333 P.2d at 711–12. Watering University landscaping is a service provided gratuitously by the University for the benefit of the students and the public who visit the campus. Individuals using the Jacoby Golf Course pay to use that facility, not to purchase irrigation water. Utilizing a well to water University landscaping is a governmental function, not proprietary. As such, the University was engaged in a governmental function in 2019–2023, not a proprietary function, and it did not lose its sovereign immunity by drilling and operating the water wells. We affirm the district court's decision to dismiss the City's claim to enforce the 1965 Covenant on the grounds of sovereign immunity.

## II. Is Wyoming Statute § 21-17-126 Unconstitutional as a "Special Law" Under Article 3, § 27 of the Wyoming Constitution?

[¶29] In its second claim for declaratory judgment, the City asserted Wyoming Statute § 21-17-126 was unconstitutional under Article 3, § 27 because it was a local or special law "that regulates township affairs" or "that grants the University a special or exclusive privilege and franchise." Article 3, § 27 of the Wyoming Constitution states:

> The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: For granting divorces; laying out, opening, altering or working roads or highways; vacating roads, town plats, streets, alleys or public grounds; locating or changing county seats; regulating county

10

or township affairs; incorporation of cities, towns or villages; or changing or amending the charters of any cities, towns or villages; regulating the practice in courts of justice; regulating the jurisdiction and duties of justices of the peace, police magistrates or constables; changing the rules of evidence in any trial or inquiry; providing for changes of venue in civil or criminal cases; declaring any person of age; for limitation of civil actions; giving effect to any informal or invalid deeds; summoning or impaneling grand or petit juries; providing for the management of common schools; regulating the rate of interest on money; the opening or conducting of any election or designating the place of voting; the sale or mortgage of real estate belonging to minors or others under disability; chartering or licensing ferries or bridges or toll roads; chartering banks, insurance companies and loan and trust companies; remitting fines, penalties or forfeitures; creating, increasing, or decreasing fees, percentages or allowances of public officers; changing the law of descent; granting to any corporation, association or individual, the right to lay down railroad tracks, or any special or exclusive privilege, immunity or franchise whatever, or amending existing charter for such purpose; for punishment of crimes; changing the names of persons or places; for the assessment or collection of taxes; affecting estates of deceased persons, minors or others under legal disabilities; extending the time for the collection of taxes; refunding money paid into the state treasury, relinquishing or extinguishing, in whole or part, the indebtedness, liabilities or obligation of any corporation or person to this state or to any municipal corporation therein; exempting property from taxation; restoring to citizenship persons convicted of infamous crimes; authorizing the creation, extension or impairing of liens; creating offices or prescribing the powers or duties of officers in counties, cities, townships or school districts; or authorizing the adoption or legitimation of children. In all other cases where a general law can be made applicable no special law shall be enacted.

[¶30]  In the order granting the University's motion to dismiss, the district court found Wyoming Statute § 21-17-126 did not fall within any of Article 3, § 27's enumerated cases, and the statute addressed the University's affairs, not "township affairs."  The district court also found Wyoming Statute § 21-17-126 did not grant the University a special or exclusive privilege because it remained subject to the laws and regulations regarding the development and use of groundwater under Title 41 of the Wyoming Statutes.  Finally, the

11

district court concluded the statute was not a special law because the University is Wyoming's only university, the Wyoming Constitution requires the legislature to provide for the University's management, and Wyoming Statute § 21-17-126 applies to all cities and counties throughout the state. The district court determined "it is nonsensical to conclude that a law must be made 'general,' or applicable to a larger audience, when the intent of the Wyoming legislature is specifically to comply with Wyoming Constitution Article 7, Section 17 so as to manage the University and its property."

[¶31]   On appeal, the City alleges Article 3, § 27 of the Wyoming Constitution is an equal protection provision, which requires the legislature to treat similarly situated citizens or entities equally. The City argues we should apply our three-part equal protection test set out in *Greenwalt v. Ram Restaurant Corp. of Wyoming*, 2003 WY 77, ¶ 40, 71 P.3d 717, 731–32 (Wyo. 2003), to determine the constitutionality of the statute. According to the City, the validity of Wyoming Statute § 21-17-126 depends on whether the legislature had "a sufficient justification" to grant the University a preference over other proprietors who operate water systems. The City asserts there is no justification for such a preference because the University has no special constitutional status as an irrigator and the statute is therefore unconstitutional.

[¶32]   The University contends the City did not raise this equal protection argument before the district court, and we should reject the City's attempt to raise it for the first time on appeal. Due to the state of the record, we are unable to determine exactly what arguments the City made before the district court in response to the motion to dismiss. However, it is clear the district court did not apply our three-part equal protection test in its order and instead focused on whether the statute was a special law.

[¶33]   Since the time it filed its complaint, the City has alleged Wyoming Statute § 21-17-126 violates Article 3, § 27. We have treated Article 3, § 27 as an equal protection provision, and we have recognized a party's special law argument may simply mirror its equal protection analysis. *See, e.g., Baessler v. Freier*, 2011 WY 125, ¶ 17, 258 P.3d 720, 727 (Wyo. 2011). Therefore, although the City's equal protection argument may not have been framed in those exact terms below, we will address it. An equal protection analysis "begins with a determination of whether the classes, which the claimant alleges are treated differently under a statute, are similarly situated." *Martin v. Bd. of Cnty. Comm'rs of Laramie Cnty.*, 2022 WY 21, ¶ 12, 503 P.3d 68, 73 (Wyo. 2022) (citing *Bird v. Wyo. Bd. of Parole*, 2016 WY 100, ¶ 7, 382 P.3d 56, 61 (Wyo. 2016)). "If the classes are not similarly situated, there can be no equal protection violation." *Id*. (citing *Bird*, ¶ 7, 382 P.3d at 61). The City asserts Wyoming Statute § 21-17-126 treats the University differently than other "government entities, community colleges, [the] Wyoming Catholic College, other schools, other proprietors of golf courses and athletic fields, [and] any other public or private landscape irrigator."

12

[¶34] The University is a unique part of the State. As the only constitutionally created state university, no other person, property, or entity shares the same class. Wyo. Const. art. 7, §§ 15–17. Unlike the other entities listed in the City's brief, the legislature is constitutionally tasked with managing the University's land and property. Wyo. Const. art. 7, §§ 15–17. Given its unique constitutional status, there are no other individuals, colleges, entities, etc. that are similarly situated to the University. Therefore, the City failed to identify a classification through which similarly situated persons or entities are treated unequally, and no further equal protection analysis is required. *See generally Martin*, 2022 WY 21, ¶ 12, 503 P.3d at 73 (citing *Bird*, 2016 WY 100, ¶ 7, 382 P.3d at 61).

[¶35] We also agree with the district court that Wyoming Statute § 21-17-126 is a general law, not a special law. "[T]o constitute a general law, as opposed to a special law, there must be some distinguishing peculiarity which gives rise to the necessity for the law as to the designated class." *May v. City of Laramie*, 131 P.2d 300, 306 (Wyo. 1942). In addition, the statute must also apply to all cities and towns in the state to be considered a general law. *State ex rel. Keefe v. McInerney*, 182 P.2d 28, 38 (Wyo. 1947). As discussed above, the University is the only constitutionally created state university, and no other person or entity shares the same class. There is a "distinguishing peculiarity" that gives rise to the necessity for Wyoming Statute § 21-17-126, and it applies equally to all cities and counties in the state. The statute does not grant privileges to some cities or counties while denying them to others. *Baessler*, 2011 WY 125, ¶ 16, 258 P.3d at 726 (quoting 73 Am. Jur. 2d Statutes § 4 (2001)). Wyoming Statute § 21-17-126 is a general law, not a special law, and it does not violate Article 3, § 27. We affirm the district court's decision to dismiss the City's request for a declaration Wyoming Statute § 21-17-126 is unconstitutional under Article 3, § 27 of the Wyoming Constitution.

### III. Is Wyoming Statute § 21-17-126 Unconstitutional as an Impermissible Delegation of Municipal Power Under Article 3, § 37 of the Wyoming Constitution?

[¶36] The City alleged Wyoming Statute § 21-17-126 violated Article 3, § 37 of the Wyoming Constitution because it gave the University the power to interfere with the City's municipal improvements and property, and it delegated to the University the power to perform the municipal function of providing water to landscapes and golf courses utilized by the public. The district court dismissed the City's claim and found the University was not a "special commissioner" within the meaning of this constitutional provision, and the statute did not give the University any power to "make, supervise, or interfere with municipal improvements or property or to perform any municipal functions."

[¶37] The City contends the district court's holding was legally erroneous. It claims the district court did not need to determine whether the University was a "special commissioner," and it only needed to determine whether the statute delegates municipal power to an entity beyond municipal control. The City further contends operating a water

system is a "municipal function," and allowing the University to operate its own water system impermissibly interferes with the City's ability to regulate and operate its water system. The University argues Wyoming Statute § 21-17-126 does not create some new entity or transfer the power to interfere with municipal functions to that entity. Rather, the statute "states that [the University] can develop a non-potable water system and that the City cannot interfere with the exercise of that discretion." The Attorney General asserts the district court correctly concluded the University is not a special commissioner, private corporation, or association, and Wyoming Statute § 21-17-126 does not delegate any power to the University which interferes with the City's municipal water system.

[¶38] Article 3, § 37 of the Wyoming Constitution reads:

> The legislature shall not delegate to any special commissioner, private corporation or association, any power to make, supervise or interfere with any municipal improvements, moneys, property or effects, whether held in trust or otherwise, to levy taxes, or to perform any municipal functions whatever.

The plain language of this constitutional provision required the district court to determine whether the University was a "special commissioner, private corporation or association." To interpret this provision any other way would render a portion meaningless, which we will not do. *See Geringer v. Bebout*, 10 P.3d 514, 520–21 (Wyo. 2000) (citing *Mgmt. Council of the Wyo. Legislature v. Jim Geringer, Governor of the State of Wyo.*, 953 P.2d 839, 845 (Wyo. 1998); *County Court Judges Ass'n v. Sidi*, 752 P.2d 960, 964 (Wyo. 1988); *Thomson v. Wyo. In-Stream Flow Comm.*, 651 P.2d 778, 790 (Wyo. 1982); *Bower v. Big Horn Canal Ass'n*, 307 P.2d 593, 597 (Wyo. 1957); *Grand Island & N.W.R. Co. v. Baker*, 45 P. 494, 498 (Wyo. 1896)).

[¶39] The City does not contend the University is a private corporation or association; it questions whether the University is a "special commissioner." The City would have us find any entity that is not a municipality is a "special commissioner." We have not interpreted this term as broadly as the City would propose. In *Town of Pine Bluffs*, we found the State Board of Equalization was not a "special commissioner" because it was "a board recognized by the constitution of this state in art. 15, §§ 9 and 10." 333 P.2d at 705. Like the Board of Equalization, the University is an entity recognized by the Wyoming Constitution, and it engages in constitutional functions prescribed by law. *See* Wyo. Const. art. 7, §§ 15–17. The University is not a special commissioner within the meaning of Article 3, § 37.

[¶40] As stated in *Town of Pine Bluffs*, the main purpose of Article 3, § 37 is "to leave the control of municipal functions in the hands of the duly elected officials in the municipality." 333 P.2d at 706. Wyoming Statute § 21-17-126 does not take control of the City's municipal functions out of the hands of its elected officials. The statute does not

give the University the power to interfere with any of the City's municipal functions. Nothing in the plain language of the statute delegates any power to the University to interfere with the City's "municipal improvements, moneys, property or effects," nor does it delegate the performance of any municipal function to the University. Wyo. Const. art. 3, § 37. Any incidental detrimental impact to the City from the University's development and utilization of its own landscape watering system does not equate to an unconstitutional delegation of municipal powers or functions by the legislature.[3] Wyoming Statute § 21-17-126 pertains directly to the management of the University's lands and property, not the operation of any municipal water system. Nothing in the statute authorizes the University to supply water to any other person or entity or to operate a municipal water utility. We affirm the district court's decision that Wyoming Statute § 21-17-126 does not violate Article 3, § 37 of the Wyoming Constitution.

## IV. Can the City Enforce Laramie Municipal Code § 13.04.360 Against the University?

[¶41] The City sought a declaration that the University had to comply with the City Ordinance. In its counterclaims, the University sought a declaration that the City did not have authority to pass the City Ordinance. Alternatively, if the district court found the City had authority to pass the City Ordinance, the University sought a declaration it was not subject to the ordinance. The University made these same arguments in its summary judgment motion. In its motion for partial summary judgment, the City asked the district court to find it had both constitutional and statutory authority to pass the City Ordinance. In its summary judgment decision, the district court found it did not need to address the validity of the City Ordinance because Wyoming Statutes §§ 21-17-126 and 15-7-701 prohibit the City from enforcing the ordinance against the University.

[¶42] Both the City and the University devoted portions of their briefs to the issue of whether the City had the authority to pass the City Ordinance, and whether Wyoming Statute § 21-17-126 completely exempts the University from complying with the City Ordinance. However, "[t]he 'cardinal principle of judicial restraint' is 'if it is not necessary to decide more, it is necessary not to decide more.'" *MH v. First Jud. Dist. Ct. of Laramie Cnty.*, 2020 WY 72, ¶ 17, 465 P.3d 405, 410 (Wyo. 2020) (Kautz, J., concurring) (quoting *PDK Labs. Inc. v. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring)); *see also Moore v. State*, 912 P.2d 1113, 1115 (Wyo. 1996) (citations omitted) ("Fundamental notions of judicial restraint and economy counsel our consideration only of

---

[3] The City also asserts Wyoming Statute § 21-17-126 is unconstitutional because it empowers the University to interfere with the City's water supply by "interfering" with the City's "senior" water rights. Wyoming Statute § 21-17-126 specifically makes the University subject to Title 41, which sets forth procedures for handling water rights interference claims. *See, e.g.,* Wyoming Statute § 41-3-911 (LexisNexis 2021). Because the University is subject to Title 41, the City has a remedy for any inference with its water rights, and the statute does not impermissibly give the University the ability to interfere with the City's water supply.

those issues necessary to a full and proper resolution of the matter presented for review, absent reason to believe the question is bound to arise again."). Wyoming Statutes §§ 21-17-126 and 15-7-701 preclude the City from enforcing the City Ordinance against the University, therefore, deciding whether the City had the authority to enact the City Ordinance is unnecessary. We affirm the district court's decision to grant summary judgment in favor of the University on this claim.

## CONCLUSION

[¶43] The University has sovereign immunity from breach of contract actions to enforce the 1965 Covenant. Wyoming Statute § 21-17-126 is not unconstitutional under either Article 3, §§ 27 or 37 of the Wyoming Constitution. Wyoming Statutes §§ 21-17-126 and 15-7-701 prohibit the City from enforcing Laramie Municipal Code § 13.04.360 against the University. Affirmed.

16